# EXHIBIT 1

# GOVERNMENT EMPLOYEES INSURANCE COMPANY
## HOME OFFICE, WASHINGTON, D.C. 20076

POLICY NUMBER    H 1313681
POLICY PERIOD FROM       07/22/92        TO        07/22/93

INSURED NAME AND ADDRESS                    MORTGAGEE NAME AND ADDRESS

SALVADOR C FULGUERAS                        MERIDIAN MORTGGAE CORP
MARTINIANA T FULGUERAS                      C/O GMAC MORTGGAE CORP
5400 NEVADA AVE NW                          8360 OLD YORK RD
WASHINGTON DC  20015                        ELKINS PARK PA  19112
                                            LN-0213185978

                                            RIGGS NATL BANK OF
                                            WASHINGTON DC
                                            8315 LEE HIGHWAY
                                            FAIRFAX VA  20031

*HOMEOWNER*
NEW DECLARATION                    EFFECTIVE    07/22/92

THE RESIDENCE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS UNLESS OTHERWISE STATED BELOW:

RATING INFORMATION – DWELLING CONSTRUCTION:  FRAME  FIRE HYDRANT NOT MORE THAN 1000_____ FEET FROM THE RESIDENCE PREMISES, FIRE DEPARTMENT NOT MORE THAN  5 _____MILES FROM THE RESIDENCE PREMISES.

COVERAGE AT THE ABOVE DESCRIBED LOCATION IS PROVIDED ONLY WHERE A LIMIT OF LIABILIYT IS SHOWN OR A PREMIUM IS STATED.

| SECTION I COVERAGE | LIMIT OF LIABILITY | PREMIUMS |
|---|---|---|
| A.  DWELLING | 152,500 | |
| B.  OTHER STRUCTURES | 15,250 | |
| C.  PERSONAL PROPERTY | 76,250 | |
| D.  LOSS OF USE | 30,500 | |
| SECTION II | | |
| E.  PERSONAL LIABIITY | 300,000 | EACH OCURRENCE |
| F.  MEDICAL PAY. TO OTHERS- | 2,000 | EACH PERSON |

TOTAL BASIC PREMIUM
TOTAL ADDITIONAL PREMIUMS
TOTAL ANNUAL PREMIUM        $ 499.00

POLICY PERIOD: 12:01 A.M. STANDARD TIME AT THE DESCRIBED LOCATION.

FORMS AND ENDORSEMENTS MADE A PART OF THIS POLICY AT TIME OF ISSUANCE: NUMBERS(S) AND EDITION DATE(S).
H03  0484, HU417 0491, HUE24 0679, H0322 0987, HUE7 0986,  H0350 0987, H0300 1187, H0243 0484, HUE12 0683.

INCASE OF LOSS UNDER S
SECTION I, WE COVER ONLY THAT PART OF THE LOSS OVER THE DEDUCTIBLE OF $ 250.00.

AGENT _____
DATE:

162-76 (1-09)

Homeowners 3
Special Form
Ed. 4-84

# AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

# DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. **"business"** includes trade, profession or occupation.

3. **"insured"** means you and residents of your household who are:

   a. your relatives; or

   b. other persons under the age of 21 and in the care of any person named above.

   Under Section II, **"insured"** also means:

   c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3a or 3b above. A person or organization using or having custody of these animals or watercraft in the course of any **business** or without consent of the owner is not an **insured;**

   d. with respect to any vehicle to which this policy applies:

      (1) persons while engaged in your employ or that of any person included in 3a or 3b above; or

      (2) other persons using the vehicle on an **insured location** with your consent.

4. **"insured location"** means:

   a. the **residence premises;**

   b. the part of other premises, other structures and grounds used by you as a residence and:

      (1) which is shown in the Declarations; or

      (2) which is acquired by you during the policy period for your use as a residence;

   c. any premises used by you in connection with a premises in 4a or 4b above;

   d. any part of a premises:

      (1) not owned by an **insured;** and

      (2) where an **insured** is temporarily residing;

   e. vacant land, other than farm land, owned by or rented to an **insured;**

   f. land owned by or rented to an **insured** on which a one or two family dwelling is being built as a residence for an **insured;**

   g. individual or family cemetery plots or burial vaults of an **insured;** or

   h. any part of a premises occasionally rented to an **insured** for other than **business** use.

5. **"occurrence"** means an accident, including exposure to conditions, which results, during the policy period, in:

   a. **bodily injury;** or

   b. **property damage.**

6. **"property damage"** means physical injury to, destruction of, or loss of use of tangible property.

7. **"residence employee"** means:

   a. an employee of an **insured** whose duties are related to the maintenance or use of the **residence premises,** including household or domestic services; or

   b. one who performs similar duties elsewhere not related to the **business** of an **insured.**

8. "residence premises" means:

   a. the one family dwelling, other structures, and grounds; or

   b. that part of any other building;

where you reside and which is shown as the "**residence premises**" in the Declarations.

"Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "**residence premises**" in the Declarations.

## SECTION I—PROPERTY COVERAGES

### COVERAGE A—Dwelling

We cover:

1. the dwelling on the **residence premises** shown in the Declarations, including structures attached to the dwelling; and

2. materials and supplies located on or next to the **residence premises** used to construct, alter or repair the dwelling or other structures on the **residence premises.**

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B—Other Structures

We cover other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. used in whole or in part for **business**; or

2. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### COVERAGE C—Personal Property

We cover personal property owned or used by an **insured** while it is anywhere in the world. At your request, we will cover personal property owned by:

1. others while the property is on the part of the **residence premises** occupied by an **insured**;

2. a guest or a **residence employee**, while the property is in any residence occupied by an **insured**.

Our limit of liability for personal property usually located at an **insured's** residence, other than the **residence premises**, is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard motors.

4. $1000 on trailers not used with watercraft.

5. $1000 on grave markers.

6. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

7. $2000 for loss by theft of firearms.

8. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

9. $2500 on property, on the **residence premises**, used at any time or in any manner for any **business** purpose.

10. $250 on property, away from the **residence premises**, used at any time or in any manner for any **business** purpose.

Copyright, Insurance Services Office, Inc., 1984
HO-3 Ed 4-84

**Property Not Covered.** We do not cover:

1. articles separately described and specifically insured in this or other insurance;

2. animals, birds or fish;

3. motor vehicles or all other motorized land conveyances. This includes:

   a. equipment and accessories; or

   b. any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or all other motorized land conveyances, including:

      (1) accessories or antennas; or

      (2) tapes, wires, records, discs or other media for use with any such device or instrument;

   while in or upon the vehicle or conveyance.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a. used to service an insured's residence; or

   b. designed for assisting the handicapped;

4. aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. property of roomers, boarders and other tenants, except property of roomers and boarders related to an insured;

6. property in an apartment regularly rented or held for rental to others by an insured;

7. property rented or held for rental to others off the residence premises;

8. a. books of account, drawings or other paper records; or

   b. electronic data processing tapes, wires, records, discs or other software media; containing business data. But, we do cover the cost of blank or unexposed records and media;

9. credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D—Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow

1. If a loss covered under this Section makes that part of the **residence premises** where you reside not fit to live in, we cover, at your choice, either of the following. However, if the **residence premises** is not your principal place of residence we will not provide the option under paragraph b below

a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

b. **Fair Rental Value,** meaning the fair rental value of that part of the **residence premises** where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under a. or b. will be for the **shortest** time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the **residence premises** rented to others or held for rental by you not fit to live in, **we cover** the:

   **Fair Rental Value,** meaning the fair rental value of that part of the **residence premises** rented to others or held for rental by you less any expenses that do not continue **while** the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from **use of** the **residence premises** as a result of direct **damage** to neighboring premises by a Peril Insured **Against** in this policy, we cover the Additional Living Expense or Fair Rental Value loss as **provided** under 1 and 2 above for no more than two **weeks.**

The periods of time under 1, 2 and 3 above **are** not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. debris of covered property if a Peril Insured Against causes the loss; or

   b. ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense for the removal of fallen trees from the **residence premises** if:

a. coverage is not afforded under Additional **Coverages** 3. Trees, Shrubs and Other Plants for the peril causing the loss; or

b. the tree is not covered by this policy;

provided the tree damages covered property and a Peril Insured Against under Coverage C causes the tree to fall. Our limit of liability for this coverage will not be more than $500 in the aggregate for any one loss.

2. **Reasonable Repairs.** We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage if a Peril Insured Against causes the loss. This coverage does not increase the limit of liability that applies to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or malicious mischief or Theft.

The limit of liability for this coverage will not be more than 5% of the limit of liability that applies to the dwelling, or more than $500 for any one tree, shrub or plant. We do not cover property grown for **business** purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card. Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for

a. the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in an **insured's** name;

b. loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an **insured's** name;

c. loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

d. loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

a. by a resident of your household;

b. by a person who has been entrusted with either type of card; or

c. if an **insured** has not complied with all terms and conditions under which the **cards** are issued.

All loss resulting from a series of acts committed by any one person or in which any **one person** is concerned or implicated is considered to be one loss.

We do not cover loss arising out of **business use** or dishonesty of an insured.

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle **any claim** or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b. If a suit is brought against an **insured for liability** under the Credit Card or Fund Transfer Card coverage, we will provide a **defense** at our expense by counsel of our choice.

c. We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners. This only applies when the assessment is made as a result of each direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage A—Dwelling, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Copyright, Insurance Services Office, Inc. 1984
HO-3 Ed. 4-84

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. Perils Insured Against in Coverage C—Personal Property. These perils apply to covered building and personal property for loss insured by this additional coverage;

b. hidden decay;

c. hidden insect or vermin damage;

d. weight of contents, equipment, animals or people;

e. weight of rain which collects on a roof; or

f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b, c, d, e, and f unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

# SECTION I—PERILS INSURED AGAINST

### COVERAGE A—DWELLING and
### COVERAGE B—OTHER STRUCTURES

We insure against risks of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however, we do not insure loss:

1. involving collapse, other than as provided in Additional Coverage 8;

2. caused by:

a. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

(1) maintain heat in the building; or

(2) shut off the water supply and drain the system and appliances of water;

b. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1) fence, pavement, patio or swimming pool;

(2) foundation, retaining wall or bulkhead; or

(3) pier, wharf or dock;

c. theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e. constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

f. (1) wear and tear, marring, deterioration;

(2) inherent vice, latent defect, mechanical breakdown;

(3) smog, rust, mold, wet or dry rot;

(4) smoke from agricultural smudging or industrial operations;

(5) release, discharge or dispersal of contaminants or pollutants;

(6) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; or

(7) birds, vermin, rodents, insects or domestic animals.

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. excluded under Section I—Exclusions.

Under items 1 and 2, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered

## COVERAGE C—PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in Section I—Exclusions.

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. committed by an insured;

   b. in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

   c. from that part of a residence premises rented by an insured to other than an insured.

   This peril does not include loss caused by theft that occurs off the residence premises of:

   a. property while at any other residence owned by, rented to, or occupied by an insured, except while an insured is temporarily living there. Property of a student who is an insured is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

   b. watercraft, including their furnishings, equipment and outboard motors; or

   c. trailers and campers.

10. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    This peril does not include loss:

    a. to the system or appliance from which the water or steam escaped;

    b. caused by or resulting from freezing except as provided in the peril of freezing below; or

    c. on the residence premises caused by accidental discharge or overflow which occurs off the residence premises.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

    This peril does not include loss on the residence premises while the dwelling is unoccupied, unless you have used reasonable care to:

    a. maintain heat in the building; or

    b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

    This peril does not include loss to a tube, transistor or similar electronic component.

16. **Damage by glass or safety glazing material** which is part of a building, storm door or storm window.

    This peril does not include loss on the residence premises if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

17. **Volcanic Eruption** other than loss caused by earthquake, land shock waves or tremors.

Copyright, Insurance Services Office, Inc., 1984
HO-3 Ed  4-84

# SECTION I—EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

   b. **Earth Movement**, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mudflow; earth sinking, rising or shifting; unless direct loss by:

      (1) fire;

      (2) explosion; or

      (3) breakage of glass or safety glazing material which is part of a building, storm door or storm window;

      ensues and then we will pay only for the ensuing loss.

      This exclusion does not apply to loss by theft.

   c. **Water Damage**, meaning:

      (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

      (2) water which backs up through sewers or drains; or

      (3) water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

      Direct loss by fire, explosion or theft resulting from water damage is covered.

   d. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the residence premises. But, if a Peril Insured Against ensues on the residence premises, we will pay only for that ensuing loss.

   e. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss.

   f. **War**, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

   g. **Nuclear Hazard**, to the extent set forth in the Nuclear Hazard Clause of Section I—Conditions.

   h. **Intentional Loss**, meaning any loss arising out of any act committed:

      (1) by or at the direction of an **insured**; and

      (2) with the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

   a. **Weather conditions**. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

   b. **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body;

   c. **Faulty, inadequate or defective:**

      (1) planning, zoning, development, surveying, siting;

      (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) materials used in repair, construction, renovation or remodeling; or

      (4) maintenance;

      of part or all of any property whether on or off the residence premises.

 Copyright, Insurance Services Office, Inc., 1984

# SECTION I—CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered. we will not be liable in any one loss:

   a. to the insured for more than the amount of the insured's interest at the time of loss; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property. you must see that the following are done:

   a. give prompt notice to us or our agent:

   b. notify the police in case of loss by theft:

   c. notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage:

   d. (1) protect the property from further damage:

   (2) make reasonable and necessary repairs to protect the property: and

   (3) keep an accurate record of repair expenses:

   e. prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory:

   f. as often as we reasonably require:

   (1) show the damaged property:

   (2) provide us with records and documents we request and permit us to make copies: and

   (3) submit to questions under oath and sign and swear to them:

   g. send to us. within 60 days after our request. your signed. sworn proof of loss which sets forth. to the best of your knowledge and belief:

   (1) the time and cause of loss.

   (2) the interest of the insured and all others in the property involved and all liens on the property:

   (3) other insurance which may cover the loss

   (4) changes in title or occupancy of the property during the term of the policy:

   (5) specifications of damaged buildings and detailed repair estimates:

   (6) the inventory of damaged personal property described in 2e above:

   (7) receipts for additional living expenses incurred and records that support the fair rental value loss; and

   (8) evidence or affidavit that supports a claim under the Credit Card. Fund Transfer Card. Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

   a. (1) Personal property:

   (2) Awnings. carpeting. household appliances. outdoor antennas and outdoor equipment. whether or not attached to buildings; and

   (3) Structures that are not buildings:

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

   b. Buildings under Coverage A or B at replacement cost without deduction for depreciation. subject to the following:

   (1) If, at the time of loss. the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss. we will pay the cost to repair or replace. after application of deductible and without deduction for depreciation. but not more than the least of the following amounts:

   (a) the limit of liability under this policy that applies to the building:

   (b) the replacement cost of that part of the building damaged for like construction and use on the same premises: or

   (c) the necessary amount actually spent to repair or replace the damaged building

Copyright. Insurance Services Office. Inc. 1984

HO-3 Ed 4 84

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

    (a) the actual cash value of that part of the building damaged; or

    (b) that proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

    (a) excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

    (b) those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

    (c) underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage unless:

    (a) actual repair or replacement is complete; or

    (b) the cost to repair or replace the damage is both:

        (i) less than 5% of the amount of insurance in this policy on the building; and

        (ii) less than $1000.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

    a. repair or replace any part to restore the pair or set to its value before the loss; or

    b. pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

    a. pay its own appraiser; and

    b. bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. reach an agreement with you;

    b. there is an entry of a final judgment; or

    c. there is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an insured.

**12. Mortgage Clause.**

The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

a.  notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b.  pays any premium due under this policy on demand if you have neglected to pay the premium; and

c.  submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If the policy is cancelled or not renewed by us, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a.  we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b.  at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14. Nuclear Hazard Clause.**

a.  "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b.  Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c.  This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**15. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**16. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

# SECTION II—LIABILITY COVERAGES

**COVERAGE E — Personal Liability**

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1.  pay up to our limit of liability for the damages for which the insured is legally liable; and

2.  provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

**COVERAGE F — Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except residence employees. As to others, this coverage applies only:

1.  to a person on the insured location with the permission of an insured; or

2. to a person off the **insured location**, if the bodily injury:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining:

   b. is caused by the activities of an insured:

c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**: or

d. is caused by an animal owned by or in the care of an **insured**.

# SECTION II—EXCLUSIONS

1. **Coverage E — Personal Liability and Coverage F — Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

   a. which is expected or intended by the insured:

   b. arising out of **business pursuits** of an insured or the rental or holding for rental of any part of any premises by an insured.

     This exclusion does not apply to:

     (1) activities which are usual to non-business pursuits: or

     (2) the rental or holding for rental of an **insured location**:

       (a) on an occasional basis if used only as a residence:

       (b) in part for use only as a residence. unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders: or

       (c) in part. as an office. school. studio or private garage:

   c. arising out of the rendering of or failure to render professional services:

   d. arising out of a premises:

     (1) owned by an insured:

     (2) rented to an insured: or

     (3) rented to others by an insured:

     that is not an **insured location**:

   e. arising out of:

     (1) the ownership. maintenance. use. loading or unloading of motor vehicles or all other motorized land conveyances. including trailers. owned or operated by or rented or loaned to an insured:

     (2) the entrustment by an insured of a motor vehicle or any other motorized land conveyance to any person: or

     (3) statutorily imposed vicarious parental liability for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

     This exclusion does not apply to:

     (1) a trailer not towed by or carried on a motorized land conveyance.

     (2) a motorized land conveyance designed for recreational use off public roads. not subject to motor vehicle registration and:

       (a) not owned by an **insured**: or

       (b) owned by an insured and on an **insured location**.

     (3) a motorized golf cart when used to play golf on a golf course.

     (4) a vehicle or conveyance not subject to motor vehicle registration which is:

       (a) used to service an **insured's** residence:

       (b) designed for assisting the handicapped: or

       (c) in dead storage on an **insured location**.

   f. arising out of:

     (1) the ownership. maintenance. use. loading or unloading of a watercraft described below:

     (2) the entrustment by an insured of a watercraft described below to any person: or

     (3) statutorily imposed vicarious parental liability for the actions of a child or minor using a watercraft described below.

     Watercraft:

     (1) with inboard or inboard-outdrive motor power owned by an insured:

     (2) with inboard or inboard-outdrive motor power of more than 50 horsepower rented to an insured:

Copyright. Insurance Services Office. Inc. 1984

(3) that is a sailing vessel, with or without auxiliary power, 26 feet or more in length owned by or rented to an **insured;** or

(4) powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an **insured.** But, outboard motors of more than 25 total horsepower are covered for the policy period if:

    (a) you acquire them prior to the policy period and:

        ( i ) you declare them at policy inception; or

        (ii) your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

    (b) you acquire them during the policy period.

This exclusion does not apply while the watercraft is stored.

g.  arising out of:

(1) the ownership, maintenance, use, loading or unloading of an aircraft;

(2) the entrustment by an **insured** of an aircraft to any person; or

(3) statutorily imposed vicarious parental liability for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

h.  caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

Exclusions d., e., f., and g. do not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an insured.

2.  **Coverage E — Personal Liability,** does not apply to:

a.  liability

(1) for your share of any loss assessment charged against all members of an association, corporation or community of property owners;

(2) under any contract or agreement. However, this exclusion does not apply to written contracts:

    (a) that directly relate to the ownership, maintenance or use of an **insured location;** or

    (b) where the liability of others is assumed by the insured prior to an **occurrence;**

    unless excluded in (1) above or elsewhere in this policy;

b.  **property damage** to property owned by the **insured;**

c.  **property damage** to property rented to, occupied or used by or in the care of the **insured.** This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d.  **bodily injury** to any person eligible to receive any benefits:

(1) voluntarily provided; or

(2) required to be provided:

by the **insured** under any:

(1) workers' compensation law;

(2) non-occupational disability law; or

(3) occupational disease law;

e.  **bodily injury** or **property damage** for which an insured under this policy:

(1) is also an insured under a nuclear energy liability policy; or

(2) would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) American Nuclear Insurers;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

f.  **bodily injury** to you or an insured within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F—Medical Payments to Others**, does not apply to **bodily injury**:

   a. to a **residence employee** if the bodily injury:

   (1) occurs off the **insured location**; and

   (2) does not arise out of or in the course of the **residence employee**'s employment by an **insured**;

   b. to any person eligible to receive benefits:

   (1) voluntarily provided; or

   (2) required to be provided;

   under any:

   (1) workers' compensation law;

   (2) non-occupational disability law; or

   (3) occupational disease law;

   c. from any:

   (1) nuclear reaction;

   (2) nuclear radiation; or

   (3) radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

   (4) any consequence of any of these.

   d. to any person, other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

---

# SECTION II—ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** in any suit we defend;

   b. premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit;

   d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies;

   e. prejudgment interest awarded against the **insured** on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per occurrence for **property damage** to property of others caused by an **insured**.

We will not pay for **property damage**:

   a. to the extent of any amount recoverable under Section I of this policy;

   b. caused intentionally by an **insured** who is 13 years of age or older;

   c. to property owned by an **insured**;

   d. to property owned by or rented to a **tenant** of an **insured** or a resident in your household; or

   e. arising out of:

   (1) **business pursuits**;

   (2) any act or omission in connection with a premises owned, rented or controlled by an **insured**, other than the **insured location**; or

   (3) the ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

   This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured**.

4. **Loss Assessment.** We will pay up to $1000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

   a. each occurrence to which Section II of this policy would apply;





b. liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

(1) the director, officer or trustee is elected by the members of a corporation or association of property owners; and

(2) the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the residence premises.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Section II — Coverage E — Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

# SECTION II—CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one occurrence will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of insureds, claims made or persons injured.

Our total liability under Coverage F for all medical expense payable for bodily injury to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each insured. This condition will not increase our limit of liability for any one occurrence.

3. **Duties After Loss.** In case of an accident or occurrence, the insured will perform the following duties that apply. You will help us by seeing that these duties are performed:

a. give written notice to us or our agent as soon as is practical, which sets forth:

(1) the identity of the policy and insured;

(2) reasonably available information on the time, place and circumstances of the accident or occurrence; and

(3) names and addresses of any claimants and witnesses;

b. promptly forward to us every notice, demand, summons or other process relating to the accident or occurrence;

c. at our request, help us:

(1) to make settlement;

(2) to enforce any right of contribution or indemnity against any person or organization who may be liable to an insured;

(3) with the conduct of suits and attend hearings and trials;

(4) to secure and give evidence and obtain the attendance of witnesses.

d. under the coverage — Damage to Property of Others — submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the insured's control;

e. the insured will not, except at the insured's own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the bodily injury.

4. **Duties of an Injured Person—Coverage F—Medical Payments to Others.**

The injured person or someone acting for the injured person will:

a. give us written proof of claim, under oath if required, as soon as is practical; and

b. authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim—Coverage F—Medical Payments to Others.** Payment under this coverage is not an admission of liability by an insured or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an insured. Also, no action with respect to Coverage E can be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an insured will not relieve us of our obligations under this policy.

8. **Other Insurance — Coverage E — Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

Copyright, Insurance Services Office, Inc., 1984
HO-3 Ed. 4-84

H

# SECTIONS I AND II—CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or bodily injury or **property damage** in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** We do not provide coverage for an insured who has:

   a. intentionally concealed or misrepresented any material fact or circumstance; or

   b. made false statements or engaged in fraudulent conduct;

   relating to this insurance.

3. **Liberalization Clause.** If we adopt a revision which would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel

     (a) if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

     (b) if the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An insured may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an insured must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

   b. insured includes:

     (1) any member of your household who is an insured at the time of your death, but only while a resident of the residence premises; and

     (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative

# HOMEOWNER POLICY OUTLINE

This outline is provided for information purposes only. It does not replace or modify the insurance contract in any way. **READ YOUR INSURANCE POLICY CAREFULLY** to understand all its provisions.

Your policy is designed to provide coverage for your home, other structures on your property, your personal belongings, loss of use of your home, personal liability, and medical payments to others.

Please review your policy declarations for specific **dollar** limits that apply to each coverage, the **deductible** that applies to property losses, the policy premium, and a description of endorsements that are attached to your policy. Special additional dollar limitations apply to some types of property for which coverage is provided. Be sure to review SECTION I of your policy to familiarize yourself with these limits as well as the types of property **not covered.**

## SECTION I - PROPERTY COVERAGE

**COVERAGE A**   covers your dwelling including attached structures. Coverage A applies to real property owned by you.

**COVERAGE B**   covers private, non business structures at your residence detached from the dwelling, such as a garage, fence, inground swimming pool or guest house.

**COVERAGE C**   covers your personal property such as clothes and furniture. Special **dollar limitations** apply to property such as $1000 on jewelry* and furs, and $200 on cash. These limits as well as excluded property such as motorized vehicles are described in Section I of your policy. Losses on personal property are settled on a **depreciated** basis unless you purchase **optional** replacement cost coverage. (HO-290)

**COVERAGE D**   Loss of Use coverage provides for payments to you if you temporarily cannot live in your residence because of a covered loss to your dwelling.

**Perils Insured Against:** The HO-3 special form policy insures the buildings against direct loss from any peril not specifically excluded. Your **personal property** is insured against the specifically named perils in the policy only. Please review Section I of your policy for a list of the named perils.

**Property Exclusions:** Specific exclusions to property coverage are stated in SECTION I of the policy. Examples are loss from earth movement, **damage from flood** or other surface or wind driven water, neglect, war, nuclear hazard and intentional loss. **NOTE - GEICO** can provide you with a separate **flood insurance policy** in eligible locations. Please call or write us for further information.

**Section II - Liability Coverages:** Section II of your policy covers you for your legal liability for bodily injury or property damage to others, arising out of your residence or caused by you and family members who live with you. Business pursuits, motor vehicles, and certain types of watercraft are examples of **exclusions** from coverage.

After you have read this outline and reviewed your policy you may feel that you need additional coverage or increased limits for present coverages to be fully protected. Your policy can be tailored to meet your specific additional insurance needs.

Some of the more common **optional coverages** include:

> **Personal property** floater for articles such as jewelry, furs, silverware, fine arts and collectibles. (HO-61)
> **Replacement** cost coverage for personal property. (HO-290)
> **Liability** coverage for home business pursuits. Liability coverage for other properties you may own.
> **Earthquake** insurance. (HO-315)

GEICO also provides separate policies for flood insurance, watercraft, and seasonal or rental properties you may own.

**Please call our 24 hour service number 800-841-3000 to discuss these or any other coverage needs you may have.**

## SPECIAL STATE MESSAGE:

Maryland, North Carolina, Virginia - Sewer backup coverage is available for additional premium.

*Virginia - Special dollar limitation for jewelry is $1,500.

HU-417-A (4-91)

ENDORSEMENT

# GOVERNMENT EMPLOYEES INSURANCE COMPANY

A Shareholder Owned Company — Not Affiliated with the United States Government

### HOME OFFICE ● WASHINGTON, D.C. 20076

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

·· Policy Number

Effective Date

## COVERAGE ADJUSTMENT ENDORSEMENT

**ADJUSTMENT IN LIMITS OF LIABILITY**

You agreed to permit us to adjust the limits of liability shown in the Declarations for Coverage A (Dwelling), at each policy anniversary or renewal, to reflect the rate of change in the Boeckh residential construction cost index, as published by the American Appraisal Company. We will round the resulting amount to the nearest $500.

These adjustments in the limit of liability for Coverage A (Dwelling) will result in an adjustment in the limits of liability for Coverages B (Other Structures), C (Personal Property), and D (Loss of Use), in accordance with our Manual of Homeowners Rules and Rates.

We will not reduce any limits of liability to less than the limits shown in the Declarations at the time this policy was issued, without first obtaining your consent to the reduction.

You have the right to refuse any of these changes in limits of liability prior to their effective dates, and the right to change limits of liability at any time.

We will calculate any change in premium, resulting from these changes in limits, on the basis of the Homeowners Rules and Rates in use by us at the time of the change in limits.

We have the right to substitute another cost index or to withdraw this agreement to adjust limits, as of an anniversary or renewal date, by giving you at least 30 days notice of our intention to do so, provided this substitution or withdrawal applies to all similar policies we issue.

All other provisions of this policy apply.

_____
Countersigned by Authorized Representative

HUE-24 (6-79)

NO SECTION II—LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
LIMITED SECTION I—PROPERTY COVERAGES FOR

HOME DAY CARE BUSINESS

HO-322
(Ed. 9-87)

If an insured regularly provides home day care services to a person or persons other than insureds and receives monetary or other compensation for such services, that enterprise is a business. Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an insured to a relative of an insured is not considered a business.

Therefore, with respect to a home day care enterprise which is considered to be a business, this policy:

1.  does not provide Section II—Liability Coverages because a business of an insured is excluded under exclusion 1.b.(1) of Section II—Exclusions;

2.  does not provide Section I—Coverage B coverage where other structures are used in whole or in part for business;

3.  limits coverage for property used on the **residence premises** for the home day care enterprise to $2,500, because Coverage C—Special Limits of Liability—item 9 imposes that limit on business property on the residence premises;

4.  limits coverage for property used off the **residence premises** for the home day care enterprise to $250, because Coverage C—Special Limits of Liability —item 10 imposes that limit on business property off the residence premises.

THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.

Copyright, Insurance Services Office, Inc., 1987      **HO-322 (Ed. 9-87)**

ENDORSEMENT

# GOVERNMENT EMPLOYEES INSURANCE COMPANY

A Shareholder Owned Company Not Affiliated with the U.S. Government

## HOME OFFICE • WASHINGTON, D.C. 20076

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number

Effective Date

## SECTION II — ADDITIONAL COVERAGES

Under Section II — Additional Coverages, the following clause is added:

5. **Property Damage Coverage for Military Personnel and Federal Government Employees.** If an **insured** is:

   a. a U.S. Government employee: or

   b. a member of the U.S. Military,

   we will pay for **property damage** to U.S. Government property, for which such **insured** is responsible under applicable government rules or regulations. Payment for such **property damage** will be at replacement cost.

   Our limit of liability, per occurrence, shall not exceed two months basic pay of the **insured** as of the time of the occurrence.

   We will not pay for **property damage** to:

   a. Aircraft:

   b. **Motor Vehicles,** including vehicles not designed for travel on public roads or subject to registration:

   c. Watercraft: or

   d. Weapons.

   We will not pay for **property damage:**

   a. to the extent of any amount payable under Section I of this policy; or

   b. caused intentionally by an **insured** who is 13 years of age or older.

---

Countersigned by Authorized Representative

HUE-7 [9-86] NS

# SUPPLEMENTAL PROVISIONS

## DEFINITIONS

Definition 5. is deleted and replaced by the following:

5. "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. bodily injury; or

   b. property damage.

## SECTION I - PROPERTY COVERAGES

Under **COVERAGE C - Personal Property, Special Limits of Liability**, item **2.** is deleted and replaced by the following:

2. $1,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

Under **COVERAGE C - Personal Property, Property Not Covered**, item **8.** is deleted and replaced by the following:

8. business data, including such data stored in:

   a. books of account, drawings or other paper records; or

   b. electronic data processing tapes, wires, records, discs or other software media.

   However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

Under **ADDITIONAL COVERAGES:**

Item **1. Debris Removal** is deleted and replaced by the following:

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500 in the aggregate for the removal from the **residence premises** of:

   a. your tree(s) felled by the peril of Windstorm or Hail;

   b. your tree(s) felled by the peril of Weight of Ice, Snow or Sleet (Forms HO-2, HO-3, HO-4 and HO-6 only); or

   c. a neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s) damages a covered structure.

Item **2. Reasonable Repairs** is deleted and replaced by the following:

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

   This coverage:

   a. does not increase the limit of liability that applies to the covered property;

   b. does not relieve you of your duties, in case of a loss to covered property, as set forth in Section I Condition 2.d.

Item **7. Loss Assessment** is deleted and replaced by the following:

7. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage A--Dwelling, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

  Copyright, Insurance Services Office, Inc., 1987

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under Sections I and II Conditions, does not apply to the coverage provided by this endorsement.

## SECTION I - PERILS INSURED AGAINST

The following perils are deleted from **Form HO-6**: 2. Windstorm or Hail; 6. Vehicles; 11. Falling Objects; 12. Weight of ice, snow or sleet; 13. Accidental discharge or overflow of water or steam; and replaced by the following:

2.   **Windstorm or Hail.**

   This peril does not include loss to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

6.   **Vehicles.**

   This peril does not include loss to a fence, driveway or walk caused by a vehicle owned or operated by a resident of the **residence premises**.

11.   **Falling Objects.**

   This peril does not include loss to the inside of a building or property contained in the building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

12.   **Weight of ice, snow or sleet** which causes damage to a building or property contained in the building.

   This peril does not include loss to an awning, fence, patio, pavement, swimming pool, foundation, retaining wall, bulkhead, pier, wharf, or dock.

13.   **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. We also pay for tearing out and replacing any part of the building which is covered under Coverage A and on the **residence premises**, if necessary to repair the system or appliance from which the water or steam escaped.

   This peril does not include loss:

   a.   to a building caused by constant or repeated seepage or leakage over a period of weeks, months or years;

   b.   on the **residence premises**, if the unit has been vacant for more than 30 consecutive days immediately before the loss. A unit being constructed is not considered vacant;

   c.   to the system or appliance from which the water or steam escaped;

   d.   caused by or resulting from freezing except as provided in the peril of freezing below; or

   e.   on the **residence premises** caused by accidental discharge or overflow which occurs away from the building where the **residence premises** is located.

The following sentence is added to the peril, **Accidental Discharge or Overflow of Water or Steam**, in all Forms except HO-1 and HO-8:

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

## SECTION I - EXCLUSIONS

Under Exclusion 3, **Water Damage**, paragraph b. is deleted and replaced by the following:

b.   water which backs up through sewers or drains or which overflows from a sump; or

(In Form HO-3, this is item 1.c.(2).)

## SECTION I - CONDITIONS

Under 2. Your Duties After Loss, paragraph f.(3) is deleted and replaced by the following:

(3)   submit to examination under oath, while not in the presence of any other **insured**, and sign the same;

Under **3. Loss Settlement** in Forms HO-1. HO-2 and HO-3, paragraph b.(4) is deleted and replaced by the following:

(4)  We will pay no more than the actual cash value of the damage unless:

    (a)  actual repair or replacement is complete; or

    (b)  the cost to repair or replace the damage is both:

        (i)  less than 5% of the amount of insurance in this policy on the building; and

        (ii)  less than $2500.

## SECTION II - LIABILITY COVERAGES

Under **Coverage E, Personal Liability,** item 1. is deleted and replaced by the following in all Forms and Endorsement HO-73:

1.  pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**.

## SECTION II - EXCLUSIONS

Under item **1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others,** item b. is deleted and replaced by the following in all Forms and Endorsement HO-73:

b.(1)  arising out of or in connection with a **business** engaged in by an **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business.**

b.(2)  arising out of the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply to the rental or holding for rental of an **insured location.**

    (i)  on an occasional basis if used only as residence;

    (ii)  in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders;

    or

    (iii)  in part, as an office, school, studio or private garage;

Under item **1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others,** the following exclusion is added to all Forms and Endorsement HO-73:

i.  which arises out of the transmission of a communicable disease by an **insured.**

(This is exclusion j. in HO-73.)

Under item **2. Coverage E - Personal Liability,** item a.(1) is deleted and replaced by the following in all Forms and Endorsement HO-73:

(1)  for any loss assessment charged against you as a member of an association, corporation or community of property owners;

## SECTION II - ADDITIONAL COVERAGES

Under item **1. Claim Expenses,** paragraph e. is deleted.

Under **3. Damage to Property of Others,** item e.(1) is deleted and replaced by the following:

(1)  a **business** engaged in by an **insured;**

Item **4. Loss Assessment** is deleted and replaced by the following:

4.  **Loss Assessment.** We will pay up to $1.000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

    a.  **bodily injury or property damage** not excluded under Section II of this policy; or

    b.  liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

        (1)  the director, officer or trustee is elected by the members of a corporation or association of property owners; and

        (2)  the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

Copyright, Insurance Services Office, inc., .

This coverage applies only to loss assessments charged against you as owner or tenant of the residence premises.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a.  one accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b.  a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

  The following do not apply to this coverage:

  1.  Section II - Coverage E - Personal Liability Exclusion 2.a.(1);

  2.  Condition 1. Policy Period, Under Sections I and II Conditions.

## SECTION II - CONDITIONS

Item 1. **Limit of Liability**, is deleted and replaced by the following:

1.  **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one occurrence will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of insureds, claims made or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence.**

Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

## SECTIONS I AND II - CONDITIONS

Item 2. **Concealment or Fraud**, is deleted and replaced by the following:

2.  **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, **an insured** has:

  a.  intentionally concealed or misrepresented any material fact or circumstance;

  b.  engaged in fraudulent conduct; or

  c.  made false statements;

  relating to this insurance.

Item 3. **Liberalization Clause** is deleted and replaced by the following:

3.  **Liberalization Clause.** If we make a change which broadens coverage under this edition of our **policy** without additional premium charge, that **change** will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

  This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

All other provisions of this policy apply.

    Copyright, Insurance Services Office, Inc., 1987

HO-300
(Ed. 11-87)

SPECIAL PROVISIONS                DISTRICT of COLUMBIA

## SECTION II—CONDITIONS

In all Forms and in Endorsement HO-350, item 1. Limit of Liability, is deleted and replaced by the following:

1.  **Limit of Liability.** Except as noted in the special limit below, our total liability under Coverage E for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage E as shown in the Declarations. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one occurrence.

    Special Limit of Liability: Our total liability under Coverage E is $10,000 for damages for which an **insured** is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded. This special limit does not increase the Coverage E limit of liability.

    Our applicable limit of liability is the same regardless of the number of **insureds**, claims made or persons injured.

    Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

## SECTION I AND II—CONDITIONS

5.  **Cancellation.** Paragraphs b.(1), b.(2), b.(3) and b.(4) are deleted and replaced by the following:

    (1) When this policy has been in effect for 30 days or less and is not a renewal with us, we may cancel for any reason by letting **you** know at least 30 days before the date cancellation takes effect.

    (2) When this policy has been in effect for more than 30 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons by letting **you** know at least 30 days before the date cancellation takes effect:

        (a) **You** have not paid a premium due;

        (b) **You** have made a material and willful misstatement or omission of fact to us in connection with any application to or claim against us;

        (c) **Your** property or other interest has been transferred to another person, unless the transfer is permissible under the terms of the policy; or

        (d) **Your** property or its interest or use has materially changed with respect to its insurability.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1987          HO-300 (Ed. 11-87)
DISTRICT of COLUMBIA

INFLATION GUARD                                                    **HO-243**
                                                                  (Ed. 4-84)

For an additional premium, the limits of liability for Coverages A, B, C and D will be increased annually by    %*, applied pro rata during the policy period.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

Copyright, Insurance Services Office, Inc., 1984          **HO-243** (Ed. 4-84)

POLICY ENDORSEMENT

# GOVERNMENT EMPLOYEES INSURANCE COMPANY

A Shareholder Owned Company Not Affiliated with the U.S. Government

**HOME OFFICE ● WASHINGTON, D.C. 20076**

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number

Effective Date

## PROTECTIVE DEVICES CREDIT ENDORSEMENT

We agree to provide you with a premium credit as shown on the declarations page for the existence in your residence premises of the fire protective or theft control devices so listed on the declarations page. You agree to maintain such devices in working order and promptly notify us of any change in any device for which a credit is shown.

This endorsement forms a part of the captioned policy issued by the Government Employees Insurance Company and is effective as of 12:01 A.M. Standard Time on the effective date of the endorsement.

Countersigned by Authorized Representative

HUE-12 (6-83)

# GOVERNMENT EMPLOYEES INSURANCE COMPANY
## HOME OFFICE, WASHINGTON, D.C. 20076

POLICY NUMBER    H1313681
POLICY PERIOD FROM        07/22/93        TO        07/22/94

INSURED NAME AND ADDRESS                          MORTGAGEE NAME AND ADDRESS

SALVADOR C FULGUERAS
MARTINIANA T FULGUERAS
5400 NEVADA AVE NW
WASHINGTON DC  20015

*HOMEOWNER*
NEW DECLARATION                          EFFECTIVE        07/22/93

THE RESIDENCE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS UNLESS OTHERWISE STATED BELOW: SAME

RATING INFORMATION – DWELLING CONSTRUCTION:  FRAME  FIRE HYDRANT NOT MORE THAN 1000_____ FEET FROM THE RESIDENCE PREMISES, FIRE DEPARTMENT NOT MORE THAN  5_____MILES FROM THE RESIDENCE PREMISES.

COVERAGE AT THE ABOVE DESCRIBED LOCATION IS PROVIDED ONLY WHERE A LIMIT OF LIABILIYT IS SHOWN OR A PREMIUM IS STATED.

SECTION I  COVERAGE

| | LIMIT OF LIABILITY | PREMIUMS |
|---|---|---|
| A.  DWELLING | 159,000 | |
| B.  OTHER STRUCTURES | 15,900 | |
| C.  PERSONAL PROPERTY | 79,500 | |
| D.  LOSS OF USE | 31,800 | |
| E.  SECTION II | | |
| F.  PERSONAL LIABIITY | 300,000 | EACH OCURRENCE |
| G.  MEDICAL PAY. TO OTHERS- | 2,000 | EACH PERSON |

TOTAL BASIC PREMIUM
TOTAL ADDITIONAL PREMIUMS
TOTAL ANNUAL PREMIUM        $ 471.30

POLICY PERIOD: 12:01 A.M. STANDARD TIME AT THE DESCRIBED LOCATION.

FORMS AND ENDORSEMENTS MADE A PART OF THIS POLICY AT TIME OF ISSUANCE: NUMBERS(S) AND EDITION DATE(S).

HO3 0484, HU417 0491, HO322 0987, HUE7 0986, HO350 0987, HO300DC 1187, HUE38 1192, HUE24 0679, HO243 0484, HUE12 0683, HO70 0987.

**INCASE OF LOSS UNDER S**
SECTION I, WE COVER ONLY THAT PART OF THE LOSS OVER THE DEDUCTIBLE OF $ 250.00

AGENT _____
DATE:

HO-76 (1-89)

Homeowners 3
Special Form
Ed. 4-84

# AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

# DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. **"business"** includes trade, profession or occupation.

3. **"insured"** means you and residents of your household who are:

   a. your relatives; or

   b. other persons under the age of 21 and in the care of any person named above.

   Under Section II, **"insured"** also means:

   c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3a or 3b above. A person or organization using or having custody of these animals or watercraft in the course of any **business** or without consent of the owner is not an **insured**;

   d. with respect to any vehicle to which this policy applies:

      (1) persons while engaged in your employ or that of any person included in 3a or 3b above; or

      (2) other persons using the vehicle on an **insured location** with your consent.

4. **"insured location"** means:

   a. the **residence premises;**

   b. the part of other premises, other structures and grounds used by you as a residence and:

      (1) which is shown in the Declarations; or

      (2) which is acquired by you during the policy period for your use as a residence;

   c. any premises used by you in connection with a premises in 4a or 4b above;

   d. any part of a premises:

      (1) not owned by an **insured;** and

      (2) where an **insured** is temporarily residing;

   e. vacant land, other than farm land, owned by or rented to an **insured;**

   f. land owned by or rented to an **insured** on which a one or two family dwelling is being built as a residence for an **insured;**

   g. individual or family cemetery plots or burial vaults of an **insured;** or

   h. any part of a premises occasionally rented to an **insured** for other than **business** use.

5. **"occurrence"** means an accident, including exposure to conditions, which results, during the policy period, in:

   a. **bodily injury;** or

   b. **property damage.**

6. **"property damage"** means physical injury to, destruction of, or loss of use of tangible property.

7. **"residence employee"** means:

   a. an employee of an **insured** whose duties are related to the maintenance or use of the **residence premises,** including household or domestic services; or

   b. one who performs similar duties elsewhere not related to the **business** of an **insured.**

     Copyright, Insurance Services Office, Inc., 1984

8. "residence premises" means

   a. the one family dwelling, other structures, and grounds; or

   b. that part of any other building:

   where you reside and which is shown as the **"residence premises"** in the Declarations

"Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the **"residence premises"** in the Declarations.

## SECTION I—PROPERTY COVERAGES

**COVERAGE A—Dwelling**

We cover:

1. the dwelling on the **residence premises** shown in the Declarations, including structures attached to the dwelling; and

2. materials and supplies located on or next to the **residence premises** used to construct, alter or repair the dwelling or other structures on the **residence premises.**

This coverage does not apply to land, including land on which the dwelling is located.

**COVERAGE B—Other Structures**

We cover other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. used in whole or in part for **business;** or

2. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

**COVERAGE C—Personal Property**

We cover personal property owned or used by an **insured** while it is anywhere in the world. At your request, we will cover personal property owned by:

1. others while the property is on the part of the **residence premises** occupied by an **insured;**

2. a guest or a **residence employee,** while the property is in any residence occupied by an **insured.**

Our limit of liability for personal property usually located at an **insured's** residence, other than the **residence premises,** is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard motors.

4. $1000 on trailers not used with watercraft.

5. $1000 on grave markers.

6. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

7. $2000 for loss by theft of firearms.

8. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

9. $2500 on property, on the **residence premises,** used at any time or in any manner for any **business** purpose.

10. $250 on property, away from the **residence premises,** used at any time or in any manner for any **business** purpose.

  Copyright. Insurance Services Office, Inc., 1984  HO-3 Ed. 4-84

**Property Not Covered.** We do not cover:

1. articles separately described and specifically insured in this or other insurance;

2. animals, birds or fish;

3. motor vehicles or all other motorized land conveyances. This includes:

   a. equipment and accessories; or

   b. any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or all other motorized land conveyances, including:

      (1) accessories or antennas; or

      (2) tapes, wires, records, discs or other media for use with any such device or instrument;

   while in or upon the vehicle or conveyance.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a. used to service an **insured's** residence; or

   b. designed for assisting the handicapped;

4. aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. property of roomers, boarders and other tenants, except property of roomers and boarders related to an **insured**;

6. property in an apartment regularly rented or held for rental to others by an **insured**;

7. property rented or held for rental to others off the **residence premises**;

8. a. books of account, drawings or other paper records; or

   b. electronic data processing tapes, wires, records, discs or other software media;

   containing **business** data. But, we do cover the cost of blank or unexposed records and media;

9. credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D—Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the **residence premises** where you reside not fit to live in, we cover, at your choice, either of the following. However, if the **residence premises** is not your principal place of residence, we will not provide the option under paragraph b. below.

   a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

   b. **Fair Rental Value,** meaning the fair rental value of that part of the **residence premises** where you reside less any expenses that do not continue while the premises is not fit to live in.

   Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the **residence premises** rented to others or held for rental by you not fit to live in, we cover the:

   **Fair Rental Value,** meaning the fair rental value of that part of the **residence premises** rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1 and 2 above for no more than two weeks.

The periods of time under 1, 2 and 3 above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. debris of covered property if a Peril Insured Against causes the loss; or

   b. ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense for the removal of fallen trees from the **residence premises** if:

a.  coverage is not afforded under Additional Coverages 3. Trees, Shrubs and Other Plants for the peril causing the loss; or

b.  the tree is not covered by this policy:

provided the tree damages covered property and a Peril Insured Against under Coverage C causes the tree to fall. Our limit of liability for this coverage will not be more than $500 in the aggregate for any one loss.

2.  **Reasonable Repairs.** We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage if a Peril Insured Against causes the loss. This coverage does not increase the limit of liability that applies to the property being repaired.

3.  **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the **residence premises,** for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises,** Vandalism or malicious mischief or Theft.

The limit of liability for this coverage will not be more than 5% of the limit of liability that applies to the dwelling, or more than $500 for any one tree, shrub or plant. We do not cover property grown for **business** purposes.

This coverage is additional insurance.

4.  **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5.  **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6.  **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

a.  the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in an **insured's** name;

b.  loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an **insured's** name;

c.  loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

d.  loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

a.  by a resident of your household;

b.  by a person who has been entrusted with either type of card; or

c.  if an **insured** has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of **business** use or dishonesty of an **insured.**

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a.  We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b.  If a suit is brought against an **insured** for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c.  We have the option to defend at our expense an insured or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7.  **Loss Assessment.** We will pay up to $1000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners. This only applies when the assessment is made as a result of each direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage A—Dwelling, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body

Copyright, Insurance Services Office, Inc., 1984

**8. Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. Perils Insured Against in Coverage C—Personal Property. These perils apply to covered building and personal property for loss insured by this additional coverage:

b. hidden decay;

c. hidden insect or vermin damage;

d. weight of contents, equipment, animals or people;

e. weight of rain which collects on a roof; or

f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b, c, d, e, and f unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

# SECTION I—PERILS INSURED AGAINST

**COVERAGE A—DWELLING and**
**COVERAGE B—OTHER STRUCTURES**

We insure against risks of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however, we do not insure loss:

1. involving collapse, other than as provided in Additional Coverage 8;

2. caused by:

a. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

(1) maintain heat in the building; or

(2) shut off the water supply and drain the system and appliances of water;

b. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1) fence, pavement, patio or swimming pool;

(2) foundation, retaining wall or bulkhead; or

(3) pier, wharf or dock;

c. theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the

loss. A dwelling being constructed is not considered vacant;

e. constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

f. (1) wear and tear, marring, deterioration;

(2) inherent vice, latent defect, mechanical breakdown;

(3) smog, rust, mold, wet or dry rot;

(4) smoke from agricultural smudging or industrial operations;

(5) release, discharge or dispersal of contaminants or pollutants;

(6) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; or

(7) birds, vermin, rodents, insects or domestic animals.

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. excluded under Section I—Exclusions.

Under items 1 and 2, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

    Copyright, Insurance Services Office, Inc., 1984

## COVERAGE C—PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in Section I—Exclusions.

1. **Fire or lightning.**

2. **Windstorm or hail.**

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

    This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

    This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

    This peril does not include loss caused by theft:

    a. committed by an **insured;**

    b. in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

    c. from that part of a **residence premises** rented by an **insured** to other than an **insured.**

    This peril does not include loss caused by theft that occurs off the **residence premises** of:

    a. property while at any other residence owned by, rented to, or occupied by an **insured,** except while an **insured** is temporarily living there. Property of a student who is an **insured** is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

    b. watercraft, including their furnishings, equipment and outboard motors; or

    c. trailers and campers

10. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    This peril does not include loss:

    a. to the system or appliance from which the water or steam escaped;

    b. caused by or resulting from freezing except as provided in the peril of freezing below; or

    c. on the **residence premises** caused by accidental discharge or overflow which occurs off the **residence premises.**

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

    This peril does not include loss on the **residence premises** while the dwelling is unoccupied, unless you have used reasonable care to:

    a. maintain heat in the building; or

    b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

    This peril does not include loss to a tube, transistor or similar electronic component.

16. **Damage by glass or safety glazing material** which is part of a building, storm door or storm window.

    This peril does not include loss on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

17. **Volcanic Eruption** other than loss caused by earthquake, land shock waves or tremors.

Copyright, Insurance Services Office, Inc., 1984    HO-3 Ed. 4-84

# SECTION I—EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction. repair. or demolition of a building or other structure. unless specifically provided under this policy.

   b. **Earth Movement,** meaning earthquake including land shock waves or tremors before. during or after a volcanic eruption: landslide: mudflow: earth sinking. rising or shifting; unless direct loss by:

      (1) fire:

      (2) explosion: or

      (3) breakage of glass or safety glazing material which is part of a building. storm door or storm window:

      ensues and then we will pay only for the ensuing loss.

      This exclusion does not apply to loss by theft.

   c. **Water Damage,** meaning:

      (1) flood. surface water. waves. tidal water. overflow of a body of water. or spray from any of these. whether or not driven by wind:

      (2) water which backs up through sewers or drains: or

      (3) water below the surface of the ground. including water which exerts pressure on or seeps or leaks through a building. sidewalk. driveway. foundation. swimming pool or other structure.

      Direct loss by fire. explosion or theft resulting from water damage is covered.

   d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **residence premises.** But. if a Peril Insured Against ensues on the **residence premises,** we will pay only for that ensuing loss.

   e. **Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss.

   f. **War,** including undeclared war. civil war. insurrection. rebellion. revolution. warlike act by a military force or military personnel. destruction or seizure or use for a military purpose. and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

   g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of Section I—Conditions.

   h. **Intentional Loss,** meaning any loss arising out of any act committed:

      (1) by or at the direction of an **insured; and**

      (2) with the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However. any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

   a. **Weather conditions.** However. this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss:

   b. **Acts or decisions,** including the failure to act or decide. of any person. group. organization or governmental body:

   c. **Faulty, inadequate or defective:**

      (1) planning. zoning. development. surveying. siting:

      (2) design. specifications. workmanship. repair. construction. renovation. remodeling. grading. compaction:

      (3) materials used in repair. construction. renovation or remodeling; or

      (4) maintenance:

      of part or all of any property whether on or off the residence premises.

# SECTION I—CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. to the **insured** for more than the amount of the **insured's** interest at the time of loss; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

   a. give prompt notice to us or our agent;

   b. notify the police in case of loss by theft;

   c. notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

   d. (1) protect the property from further damage;

      (2) make reasonable and necessary repairs to protect the property; and

      (3) keep an accurate record of repair expenses;

   e. prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   f. as often as we reasonably require:

      (1) show the damaged property;

      (2) provide us with records and documents we request and permit us to make copies; and

      (3) submit to questions under oath and sign and swear to them;

   g. send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) the interest of the **insured** and all others in the property involved and all liens on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of the policy;

      (5) specifications of damaged buildings and detailed repair estimates;

      (6) the inventory of damaged personal property described in 2e above;

      (7) receipts for additional living expenses incurred and records that support the fair rental value loss; and

      (8) evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

   a. (1) Personal property;

      (2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

      (3) Structures that are not buildings;

      at actual cash value at the time of loss but not more than the amount required to repair or replace.

   b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

      (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

         (a) the limit of liability under this policy that applies to the building;

         (b) the replacement cost of that part of the building damaged for like construction and use on the same premises; or

         (c) the necessary amount actually spent to repair or replace the damaged building.

      Copyright, Insurance Services Office, Inc., 1984      HO-3 Ed 4 84

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

    (a) the actual cash value of that part of the building damaged; or

    (b) that proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

    (a) excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

    (b) those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

    (c) underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage unless:

    (a) actual repair or replacement is complete; or

    (b) the cost to repair or replace the damage is both:

        (i) less than 5% of the amount of insurance in this policy on the building; and

        (ii) less than $1000.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

    a. repair or replace any part to restore the pair or set to its value before the loss; or

    b. pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

    a. pay its own appraiser; and

    b. bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. reach an agreement with you;

    b. there is an entry of a final judgment; or

    c. there is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an insured.

**12. Mortgage Clause.**

The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b. pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If the policy is cancelled or not renewed by us, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14. Nuclear Hazard Clause.**

a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**15. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**16. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

---

# SECTION II—LIABILITY COVERAGES

### COVERAGE E — Personal Liability

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability.

### COVERAGE F — Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except **residence employees**. As to others, this coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**; or

Copyright, Insurance Services Office, Inc., 1984     HO-3 Ed. 4-84

2. to a person off the **insured location**, if the bodily **injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

d. is caused by an animal owned by or in the care of an **insured**.

# SECTION II—EXCLUSIONS

1. **Coverage E — Personal Liability and Coverage F — Medical Payments to Others** do not apply to **bodily injury or property damage**:

   a. which is expected or intended by the **insured**;

   b. arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**.

     This exclusion does not apply to:

     (1) activities which are usual to non-business pursuits; or

     (2) the rental or holding for rental of an **insured location**:

       (a) on an occasional basis if used only as a residence;

       (b) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

       (c) in part, as an office, school, studio or private garage;

   c. arising out of the rendering of or failure to render professional services;

   d. arising out of a premises:

     (1) owned by an **insured**;

     (2) rented to an **insured**; or

     (3) rented to others by an **insured**;

     that is not an **insured location**;

   e. arising out of:

     (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an **insured**;

     (2) the entrustment by an **insured** of a motor vehicle or any other motorized land conveyance to any person; or

(3) statutorily imposed vicarious parental liability for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

(1) a trailer not towed by or carried on a motorized land conveyance.

(2) a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

   (a) not owned by an **insured**; or

   (b) owned by an **insured** and on an **insured location**.

(3) a motorized golf cart when used to play golf on a golf course.

(4) a vehicle or conveyance not subject to motor vehicle registration which is:

   (a) used to service an **insured's** residence;

   (b) designed for assisting the handicapped; or

   (c) in dead storage on an **insured location**.

   f. arising out of:

     (1) the ownership, maintenance, use, loading or unloading of a watercraft described below;

     (2) the entrustment by an **insured** of a watercraft described below to any person; or

     (3) statutorily imposed vicarious parental liability for the actions of a child or minor using a watercraft described below.

   Watercraft:

   (1) with inboard or inboard-outdrive motor power owned by an **insured**;

   (2) with inboard or inboard-outdrive motor power of more than 50 horsepower rented to an **insured**;

 Copyright, Insurance Services Office, Inc., 1984

(3) that is a sailing vessel, with or without auxiliary power, 26 feet or more in length owned by or rented to an **insured;** or

(4) powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an **insured.** But, outboard motors of more than 25 total horsepower are covered for the policy period if:

(a) you acquire them prior to the policy period and:

( i) you declare them at policy inception; or

(ii) your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

(b) you acquire them during the policy period.

This exclusion does not apply while the watercraft is stored.

g. arising out of:

(1) the ownership, maintenance, use, loading or unloading of an aircraft;

(2) the entrustment by an **insured** of an aircraft to any person; or

(3) statutorily imposed vicarious parental liability for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

h. caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

Exclusions d., e., f., and g. do not apply to **bodily injury** to a residence employee arising out of and in the course of the **residence employee's** employment by an **insured.**

2. **Coverage E — Personal Liability,** does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association, corporation or community of property owners;

(2) under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) that directly relate to the ownership, maintenance or use of an **insured location;** or

(b) where the liability of others is assumed by the **insured** prior to an **occurrence;**

unless excluded in (1) above or elsewhere in this policy;

b. **property damage** to property owned by the **insured;**

c. **property damage** to property rented to, occupied or used by or in the care of the **insured.** This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to any person eligible to receive any benefits:

(1) voluntarily provided; or

(2) required to be provided;

by the **insured** under any:

(1) workers' compensation law;

(2) non-occupational disability law; or

(3) occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy:

(1) is also an insured under a nuclear energy liability policy; or

(2) would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) American Nuclear Insurers;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

f. **bodily injury** to you or an **insured** within the meaning of part a. or b. of "**insured**" as defined.

3.

W. lia

1.

2.

3.

low-
writ-

ship,
ured

as-
an

here

the

oc-
in-
rop-
ex-

eive

hich

ergy

y but
ility.

ued

ter-

ada:

the
as

**3.** **Coverage F—Medical Payments to Others**, does not apply to **bodily injury**:

  a. to a **residence employee** if the **bodily injury**:

    (1) occurs off the **insured location**; and

    (2) does not arise out of or in the course of the **residence employee's** employment by an **insured**;

  b. to any person eligible to receive benefits:

    (1) voluntarily provided; or

    (2) required to be provided;

  under any:

    (1) workers' compensation law;

    (2) non-occupational disability law; or

    (3) occupational disease law:

  c. from any:

    (1) nuclear reaction;

    (2) nuclear radiation; or

    (3) radioactive contamination;

    all whether controlled or uncontrolled or however caused; or

    (4) any consequence of any of these.

  d. to any person, other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II—ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

**1. Claim Expenses.** We pay:

  a. expenses we incur and costs taxed against an **insured** in any suit we defend;

  b. premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

  c. reasonable expenses incurred by an **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit;

  d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies;

  e. prejudgment interest awarded against the **insured** on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

**2. First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for bodily injury covered under this policy. We will not pay for first aid to you or any other **insured**.

**3. Damage to Property of Others.** We will pay, at replacement cost, up to $500 per **occurrence** for **property damage** to property of others caused by an **insured**.

We will not pay for **property damage**:

  a. to the extent of any amount recoverable under Section I of this policy;

  b. caused intentionally by an **insured** who is 13 years of age or older;

  c. to property owned by an **insured**;

  d. to property owned by or rented to a tenant of an **insured** or a resident in your household; or

  e. arising out of:

    (1) **business** pursuits;

    (2) any act or omission in connection with a premises owned, rented or controlled by an **insured**, other than the **insured location**; or

    (3) the ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

    This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured**.

**4. Loss Assessment.** We will pay up to $1000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

  a. each **occurrence** to which Section II of this policy would apply;





b. liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

(1) the director, officer or trustee is elected by the members of a corporation or association of property owners; and

(2) the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Section II — Coverage E — Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

# SECTION II—CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of **insureds**, claims made or persons injured.

   Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each **insured.** This condition will not increase our limit of liability for any one **occurrence.**

3. **Duties After Loss.** In case of an accident or occurrence, the **insured** will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. give written notice to us or our agent as soon as is practical, which sets forth:

      (1) the identity of the policy and **insured;**

      (2) reasonably available information on the time, place and circumstances of the accident or occurrence; and

      (3) names and addresses of any claimants and witnesses;

   b. promptly forward to us every notice, demand, summons or other process relating to the accident or occurrence;

   c. at our request, help us:

      (1) to make settlement;

      (2) to enforce any right of contribution or indemnity against any person or organization who may be liable to an **insured;**

      (3) with the conduct of suits and attend hearings and trials;

      (4) to secure and give evidence and obtain the attendance of witnesses;

   d. under the coverage — Damage to Property of Others — submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the **insured's** control;

   e. the **insured** will not, except at the **insured's** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **bodily injury.**

4. **Duties of an Injured Person—Coverage F— Medical Payments to Others.**

   The injured person or someone acting for the injured person will:

   a. give us written proof of claim, under oath if required, as soon as is practical; and

   b. authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim—Coverage F—Medical Payments to Others.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an **insured.** Also, no action with respect to Coverage E can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** will not relieve us of our obligations under this policy.

8. **Other Insurance — Coverage E — Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

Copyright. Insurance Services Office, Inc., 1984
HO-3 Ed. 4-84

# SECTIONS I AND II—CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or **bodily injury** or **property damage** in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** We do not provide coverage for an **insured** who has:

   a. intentionally concealed or misrepresented any material fact or circumstance; or

   b. made false statements or engaged in fraudulent conduct;

   relating to this insurance.

3. **Liberalization Clause.** If we adopt a revision which would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (b) if the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with **us.**

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

   b. **insured** includes:

   (1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises;** and

   (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

## HOMEOWNER POLICY OUTLINE

This outline is provided for information purposes only. It does not replace or modify the insurance contract in any way. **READ YOUR INSURANCE POLICY CAREFULLY** to understand all its provisions.

Your policy is designed to provide coverage for your home, other structures on your property, your personal belongings, loss of use of your home, personal liability, and medical payments to others.

Please review your policy declarations for specific **dollar limits** that apply to each coverage, the **deductible** that applies to property losses, the policy premium, and a description of endorsements that are attached to your policy. Special additional dollar limitations apply to some types of property for which coverage is provided. Be sure to review SECTION I of your policy to familiarize yourself with these limits as well as the types of property **not covered**.

## SECTION I - PROPERTY COVERAGE

COVERAGE A    covers your dwelling including attached structures. Coverage A applies to real property owned by you.

COVERAGE B    covers private, non business structures at your residence detached from the dwelling, such as a garage, fence, inground swimming pool or guest house.

COVERAGE C    covers your personal property such as clothes and furniture. Special dollar limitations apply to property such as $1000 on jewelry* and furs, and $200 on cash. These limits as well as excluded property such as motorized vehicles are described in Section I of your policy. Losses on personal property are settled on a depreciated basis unless you purchase **optional** replacement cost coverage. (HO-290)

COVERAGE D    Loss of Use coverage provides for payments to you if you temporarily cannot live in your residence because of a covered loss to your dwelling.

**Perils Insured Against:** The HO-3 special form policy insures the **buildings** against direct loss from any peril not specifically excluded. Your **personal property** is insured against the specifically named perils in the policy only. Please review Section I of your policy for a list of the named perils.

**Property Exclusions:** Specific exclusions to property coverage are stated in SECTION I of the policy. Examples are loss from earth movement, **damage from flood** or other surface or wind driven water, neglect, war, nuclear hazard and intentional loss. **NOTE - GEICO** can provide you with a separate **flood insurance policy** in eligible locations. Please call or write us for further information.

**Section II - Liability Coverages:** Section II of your policy covers you for your legal liability for bodily injury or property damage to others, arising out of your residence or caused by you and family members who live with you. Business pursuits, motor vehicles, and certain types of watercraft are examples of **exclusions** from coverage.

After you have read this outline and reviewed your policy you may feel that you need additional coverage or increased limits for present coverages to be fully protected. Your policy can be tailored to meet your specific additional insurance needs.

Some of the more common **optional** coverages include:

**Personal property** floater for articles such as jewelry, furs, silverware, fine arts and collectibles. (HO-61)
**Replacement** cost coverage for personal property. (HO-290)
**Liability** coverage for home business pursuits. Liability coverage for other properties you may own.
**Earthquake** insurance. (HO-315)

GEICO also provides separate policies for flood insurance, watercraft, and seasonal or rental properties you may own.

**Please call our 24 hour service number 800-841-3000 to discuss these or any other coverage needs you may have.**

SPECIAL STATE MESSAGE:

**Maryland, North Carolina, Virginia** - Sewer backup coverage is available for additional premium.

*Virginia - Special dollar limitation for jewelry is $1,500.

HU-417-A (4-91)

<u>NO</u> SECTION II—LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
<u>LIMITED</u> SECTION I—PROPERTY COVERAGES FOR     **HO-322**
## HOME DAY CARE BUSINESS
(Ed. 9-87)

If an insured regularly provides home day care services to a person or persons other than insureds and receives monetary or other compensation for such services, that enterprise is a **business**. Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an insured to a relative of an insured is not considered a business.

Therefore, with respect to a home day care enterprise which is considered to be a business, this policy:

1.  does not provide Section II—Liability Coverages because a **business** of an insured is excluded under exclusion 1.b.(1) of Section II—Exclusions;

2.  does not provide Section I—Coverage B coverage where other structures are used in whole or in part for **business**;

3.  limits coverage for property used on the **residence premises** for the home day care enterprise to $2,500, because Coverage C—Special Limits of Liability—item 9 imposes that limit on business property on the residence premises;

4.  limits coverage for property used off the **residence premises** for the home day care enterprise to $250, because Coverage C—Special Limits of Liability—item 10 imposes that limit on business property off the residence premises.

THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.

Copyright, Insurance Services Office, Inc., 1987     **HO-322 (Ed. 9-87)**

# ENDORSEMENT
## GOVERNMENT EMPLOYEES INSURANCE COMPANY
A Shareholder Owned Company Not Affiliated with the U.S. Government

### HOME OFFICE • WASHINGTON, D.C. 20076

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number

Effective Date

## SECTION II – ADDITIONAL COVERAGES

Under Section II — Additional Coverages, the following clause is added:

5.  **Property Damage Coverage for Military Personnel and Federal Government Employees. If an insured is:**

    a.  a U.S. Government employee; or

    b.  a member of the U.S. Military,

    we will pay for **property damage** to U.S. Government property, for which such **insured** is responsible under applicable government rules or regulations. Payment for such **property damage** will be at replacement cost.

    Our limit of liability, per occurrence, shall not exceed two months basic pay of the **insured** as of the time of the occurrence.

    We will not pay for the **property damage** to:

    a.  Aircraft;

    b.  **Motor Vehicles,** including vehicles not designed for travel on public roads or subject to registration;

    c.  Watercraft; or

    d.  Weapons.

    We will not pay for **property damage:**

    a.  to the extent of any amount payable under Section I of this policy; or

    b.  caused intentionally by an **insured** who is 13 years of age or older.

Countersigned by Authorized Representative

HUE-7 (9-86) NS

## DEFINITIONS

**Definition 5.** is deleted and replaced by the following:

5. **"occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

    a. **bodily injury;** or

    b. **property damage.**

## SECTION I - PROPERTY COVERAGES

Under **COVERAGE C - Personal Property, Special Limits of Liability,** item 2. is deleted and replaced by the following:

2. $1,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

    This limit includes the cost to research, replace or restore the information from the lost or damaged material.

Under **COVERAGE C - Personal Property, Property Not Covered,** item 8. is deleted and replaced by the following:

8. business data, including such data stored in:

    a. books of account, drawings or other paper records; or

    b. electronic data processing tapes, wires, records, discs or other software media.

    However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

Under **ADDITIONAL COVERAGES:**

Item 1. **Debris Removal** is deleted and replaced by the following:

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

    a. debris of covered property if a Peril-Insured Against that applies to the damaged property causes the loss; or

    b. ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500 in the aggregate for the removal from the residence premises of:

    a. your tree(s) felled by the peril of Windstorm or Hail;

    b. your tree(s) felled by the peril of Weight of Ice, Snow or Sleet (Forms HO-2, HO-3, HO-4 and HO-6 only); or

    c. a neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s) damages a covered structure.

Item 2. **Reasonable Repairs** is deleted and replaced by the following:

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

    This coverage:

    a. does not increase the limit of liability that applies to the covered property;

    b. does not relieve you of your duties, in case of a loss to covered property, as set forth in Section I Condition 2.d.

Item 7. **Loss Assessment** is deleted and replaced by the following:

7. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage A--Dwelling, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

Copyright, Insurance Services Office, Inc., 1987

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under Sections I and II Conditions, does not apply to the coverage provided by this endorsement.

## SECTION I - PERILS INSURED AGAINST

The following perils are deleted from **Form HO-6**: 2. Windstorm or Hail; 6. Vehicles; 11. Falling Objects; 12. Weight of ice, snow or sleet; 13. Accidental discharge or overflow of water or steam; and replaced by the following:

2.   **Windstorm or Hail.**

   This peril does not include loss to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

6.   **Vehicles.**

   This peril does not include loss to a fence, driveway or walk caused by a vehicle owned or operated by a resident of the **residence premises**.

11.   **Falling Objects.**

   This peril does not include loss to the inside of a building or property contained in the building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

12.   **Weight of ice, snow or sleet** which causes damage to a building or property contained in the building.

   This peril does not include loss to an awning, fence, patio, pavement, swimming pool, foundation, retaining wall, bulkhead, pier, wharf, or dock.

13.   **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. We also pay for tearing out and replacing any part of the building which is covered under Coverage A and on the **residence premises**, if necessary to repair the system or appliance from which the water or steam escaped.

   This peril does not include loss:

   a.   to a building caused by constant or repeated seepage or leakage over a period of weeks, months or years;

   b.   on the **residence premises**, if the unit has been vacant for more than 30 consecutive days immediately before the loss. A unit being constructed is not considered vacant;

   c.   to the system or appliance from which the water or steam escaped;

   d.   caused by or resulting from freezing except as provided in the peril of freezing below; or

   e.   on the **residence premises** caused by accidental discharge or overflow which occurs away from the building where the **residence premises** is located.

The following sentence is added to the peril, **Accidental Discharge or Overflow of Water or Steam**, in all Forms except HO-1 and HO-8:

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

## SECTION I - EXCLUSIONS

Under Exclusion 3. **Water Damage**, paragraph b. is deleted and replaced by the following:

b.   water which backs up through sewers or drains or which overflows from a sump; or

(In Form HO-3, this is item 1.c.(2).)

## SECTION I - CONDITIONS

Under 2. **Your Duties After Loss**, paragraph f.(3) is deleted and replaced by the following:

(3)   submit to examination under oath, while not in the presence of any other **insured**, and sign the same;

         Copyright, Insurance Services Office, Inc., 1987

Under 3. **Loss Settlement** in Forms HO-1, HO-2 and HO-3, paragraph b.(4) is deleted and replaced by the following:

(4) We will pay no more than the actual cash value of the damage unless:

    (a) actual repair or replacement is complete; or

    (b) the cost to repair or replace the damage is both:

        (i) less than 5% of the amount of insurance in this policy on the building; and

        (ii) less than $2500.

## SECTION II - LIABILITY COVERAGES

Under **Coverage E, Personal Liability,** item 1. is deleted and replaced by the following in all Forms and Endorsement HO-73:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured.**

## SECTION II - EXCLUSIONS

Under item 1. **Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others,** item b. is deleted and replaced by the following in all Forms and Endorsement HO-73:

b.(1) arising out of or in connection with a **business** engaged in by an **insured.** This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business.

b.(2) arising out of the rental or holding for rental of any part of any premises by an **insured.** This exclusion does not apply to the rental or holding for rental of an **insured location.**

    (i) on an occasional basis if used only as residence;

    (ii) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders;

or

    (iii) in part, as an office, school, studio or private garage;

Under item 1. **Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others,** the following exclusion is added to all Forms and Endorsement HO-73:

i. which arises out of the transmission of a communicable disease by an **insured.**

(This is exclusion j. in HO-73.)

Under item 2. **Coverage E - Personal Liability,** item a.(1) is deleted and replaced by the following in all Forms and Endorsement HO-73:

(1) for any loss assessment charged against you as a member of an association, corporation or community of property owners;

## SECTION II - ADDITIONAL COVERAGES

Under item 1. **Claim Expenses,** paragraph e. is deleted.

Under 3. **Damage to Property of Others,** item e.(1) is deleted and replaced by the following:

(1) a **business** engaged in by an **insured;**

Item 4. **Loss Assessment** is deleted and replaced by the following:

4. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

    a. bodily injury or property damage not excluded under Section II of this policy; or

    b. liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

        (1) the director, officer or trustee is elected by the members of a corporation or association of property owners; and

        (2) the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

Copyright, Insurance Services Office, Inc., 1987

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a. one accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);

2. Condition 1. Policy Period, Under Sections I and II Conditions.

## SECTION II - CONDITIONS

Item 1. **Limit of Liability,** is deleted and replaced by the following:

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of **insureds,** claims made or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence.**

Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

## SECTIONS I AND II - CONDITIONS

Item 2. **Concealment or Fraud,** is deleted and replaced by the following:

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an **insured** has:

   a. intentionally concealed or misrepresented any material fact or circumstance;

   b. engaged in fraudulent conduct; or

   c. made false statements;

   relating to this insurance.

Item 3. **Liberalization Clause** is deleted and replaced by the following:

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

All other provisions of this policy apply.

    Copyright, Insurance Services Office, Inc., 1987

HO-300
(Ed. 11-87)

**SPECIAL PROVISIONS**    DISTRICT of COLUMBIA

## SECTION II—CONDITIONS

In all Forms and in Endorsement HO-350, item 1. **Limit of Liability**, is deleted and replaced by the following:

1.  **Limit of Liability.** Except as noted in the special limit below, our total liability under Coverage E for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage E as shown in the Declarations. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence**.

    Special Limit of Liability: Our total liability under Coverage E is $10,000 for damages for which an **insured** is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded. This special limit does not increase the Coverage E limit of liability.

    Our applicable limit of liability is the same regardless of the number of **insureds**, claims made or persons injured.

    Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

## SECTION I AND II—CONDITIONS

5.  **Cancellation.** Paragraphs b.(1), b.(2), b.(3) and b.(4) are deleted and replaced by the following:

    **(1)** When this policy has been in effect for 30 days or less and is not a renewal with us, we may cancel for any reason by letting you know at least 30 days before the date cancellation takes effect.

    **(2)** When this policy has been in effect for more than 30 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons by letting you know at least 30 days before the date cancellation takes effect:

    **(a)** You have not paid a premium due;

    **(b)** You have made a material and willful misstatement or omission of fact to us in connection with any application to or claim against us;

    **(c)** Your property or other interest has been transferred to another person, unless the transfer is permissible under the terms of the policy; or

    **(d)** Your property or its interest or use has materially changed with respect to its insurability.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1987

HO-300 (Ed. 11-87)
DISTRICT of COLUMBIA

**GOVERNMENT EMPLOYEES INSURANCE COMPANY**
**ONE GEICO PLAZA, WASHINGTON, D.C. 20076**

HUE-38 (11-92)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## WATER BACK UP AND SUMP OVERFLOW - 1984

1.  We insure, up to $5,000 for direct physical loss, not caused by the negligence of any **insured**, to property covered under Section I caused by:

    a.  water which backs up through sewers or drains; or

    b.  water which overflows from a sump even if such overflow results from the mechanical breakdown of the sump pump.  This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

    This endorsement does not increase the limits of liability for Coverages A, B, C or D stated in the policy Declarations.

2.  . Special Deductible.

    The following deductible provision replaces any other deductible provision in the policy with respect to loss covered under this endorsement.

    We will pay only that part of the loss which exceeds $250.  No other deductible applies to this coverage.  This deductible does not apply with respect to Coverage D - Loss of Use.

3.  Section I - Perils Insured Against

    In Form HO-3, paragraph 2.f.(2) under Coverage A - Dwelling and Coverage B - Other Structures is deleted, with respect to coverage for loss caused by overflow of sumps, and replaced by the following:

    (2)  inherent vice, latent defect;

    In Form HO-15, this is subparagraph 1.b.(4)(b); in HO-32, this is subparagraph 2.f.(2).

4.  Section I - Exclusions

    3.  **Water Damage** is deleted and replaced by the following:

    3.  **Water Damage**, meaning:

        a.  Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; or

        b.  Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

    Direct loss by fire or explosion resulting from water damage is covered.

    (In Form HO-3, this is item 1.c.)

    All other provisions of this policy apply.

Contains copyrighted material of Insurance Services Office. Inc., 1992, used with their permission.

ENDORSEMENT
# GOVERNMENT EMPLOYEES INSURANCE COMPANY
A Shareholder Owned Company -- Not Affiliated with the United States Government

**HOME OFFICE ● WASHINGTON, D.C. 20076**

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number

Effective Date

## COVERAGE ADJUSTMENT ENDORSEMENT

**ADJUSTMENT IN LIMITS OF LIABILITY**

You agreed to permit us to adjust the limits of liability shown in the Declarations for Coverage A (Dwelling), at each policy anniversary or renewal, to reflect the rate of change in the Boeckh residential construction cost index, as published by the American Appraisal Company. We will round the resulting amount to the nearest $500.

These adjustments in the limit of liability for Coverage A (Dwelling) will result in an adjustment in the limits of liability for Coverages B (Other Structures), C (Personal Property), and D (Loss of Use), in accordance with our Manual of Homeowners Rules and Rates.

We will not reduce any limits of liability to less than the limits shown in the Declarations at the time this policy was issued, without first obtaining your consent to the reduction.

You have the right to refuse any of these changes in limits of liability prior to their effective dates, and the right to change limits of liability at any time.

We will calculate any change in premium, resulting from these changes in limits, on the basis of the Homeowners Rules and Rates in use by us at the time of the change in limits.

We have the right to substitute another cost index or to withdraw this agreement to adjust limits, as of an anniversary or renewal date, by giving you at least 30 days notice of our intention to do so, provided this substitution or withdrawal applies to all similar policies we issue.

All other provisions of this policy apply.

_____    _____
Countersigned by Authorized Representative

HUE-24 (6-79)

**INFLATION GUARD**

**HO-243**
(Ed. 4-84)

For an additional premium, the limits of liability for Coverages A, B, C and D will be increased annually by    %*, applied pro rata during the policy period.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

Copyright, Insurance Services Office, Inc., 1984
**HO-243** (Ed. 4-84)

POLICY ENDORSEMENT

# GOVERNMENT EMPLOYEES INSURANCE COMPANY

A Shareholder Owned Company Not Affiliated with the U.S. Government

## HOME OFFICE ● WASHINGTON, D.C. 20076

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number

Effective Date

### PROTECTIVE DEVICES CREDIT ENDORSEMENT

We agree to provide you with a premium credit as shown on the declarations page for the existence in your residence premises of the fire protective or theft control devices so listed on the declarations page. You agree to maintain such devices in working order and promptly notify us of any change in any device for which a credit is shown.

This endorsement forms a part of the captioned policy issued by the Government Employees Insurance Company and is effective as of 12:01 A.M. Standard Time on the effective date of the endorsement.

Countersigned by Authorized Representative

HUE-12 (6-83)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL RESIDENCE RENTED TO OTHERS
## 1, 2, 3, OR 4 FAMILIES

**SECTION II:**

For an additional premium, under Coverage E - Personal Liability and Coverage F - Medical Payments to Others, the premises listed below are included in the definition of **Insured location.**

With respect to the premises listed below, Exclusion 1.b.(2), under Section II Exclusions - Coverage E - Personal Liability and Coverage F - Medical Payments to Other, does not apply.

| LOCATION* | NUMBER OF FAMILIES* | | | |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| | | | | |

* Entries may be left blank if shown elsewhere in this policy for this coverage

All other provisions of this policy apply.

     Copyright, Insurance Services Office, Inc., 1987

# EXHIBIT 2

★ ★ ★ GOVERNMENT
OF THE
DISTRICT OF COLUMBIA

HERA-63
(Rev. 5/89)
5-5091

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS**
**HOUSING AND ENVIRONMENTAL REGULATION ADMINISTRATION**
**HOUSING INSPECTION DIVISION**
**P. O. Box 37200 • Washington, D.C. 20013-7200**

**HOUSING DEFICIENCY NOTICE**

072257

| NOTICE | DATE | PAGE |
|---|---|---|
| 103245 | 07/22/93 | 2 |

Address of Premises in Violation

5400 NEVADA AV., N.W.
5400 NEVADA AV., N.W.
WASHINGTON, D.C. 20015

Inspector's Name

MR. ROBERT LONGFORT

Signature

Telephone No. 787-7615

NOTICE: A recent inspection of the premises listed was made by a representative of this Division in conformance with the District of Columbia Municipal Regulations - Title 14. This notice is to inform you that the items indicated are in violation of existing laws and regulations. Accordingly, you are hereby ordered to correct these violations within the time specified below. If you fail to correct the violations in the time specified, the DCRA Civil Infractions Act of 1985 allows the Department of Consumer and Regulatory Affairs to impose fines for violations like the ones described herewith. Other laws allow for criminal prosecution as an alternative.

10 DAY(S)   FROM DATE OF SERVICE OF THIS NOTICE

BY MAIL:   [  ] Regular   [  ] Certified   [  ] Registered

Person Served _____
Address where served _____
Relationship to Resp. Person _____
Date _____ Time _____ Notice Served by: _____

**IMPORTANT: See reverse side for instructions.**

| Item No. | DCMR Title 14 | VIO CODE | LOCATION AND NATURE OF REPORTED VIOLATION | AMOUNT OF FINE |
|---|---|---|---|---|
| | | | INSPECTION DATE: _____ TIME: _____ | |
| | | | REINSPECTION DATE: _____ TIME: _____ | |
| | | | SUPERVISOR'S SIGNATURE: _____ DATE: 9/28/93 | |
| | | | *** END OF VIOLATION NOTICE *** | |

| | | | |
|---|---|---|---|
| 0002 | 707.3 | 612 | LEAD BASED PAINT HAS BEEN FOUND ON THE FOLLOWING INTERIOR SURFACES IN A QUANTITY SUFFICIENT TO CONSTITUTE A HAZARD TO THE HEALTH OF ONE OR MORE OF THE INHABITANTS OF, OR A VISITOR TO, UNDER AGE OF EIGHT YEARS, THE ABOVE PREMISES. SEC. 707.3 HALLWAY |
| 0003 | 707.3 | 612 | LEAD BASED PAINT HAS BEEN FOUND ON THE FOLLOWING INTERIOR SURFACES IN A QUANTITY SUFFICIENT TO CONSTITUTE A HAZARD TO THE HEALTH OF ONE OR MORE OF THE INHABITANTS OF, OR A VISITOR TO, UNDER AGE OF EIGHT YEARS, THE ABOVE PREMISES. SEC. 707.3 LIVING ROOM WINDOW SILL |
| 0004 | 707.3 | 612 | LEAD BASED PAINT HAS BEEN FOUND ON THE FOLLOWING INTERIOR SURFACES IN A QUANTITY SUFFICIENT TO CONSTITUTE A HAZARD TO THE HEALTH OF ONE OR MORE OF THE INHABITANTS OF, OR A VISITOR TO, UNDER AGE OF EIGHT YEARS, THE ABOVE PREMISES. SEC. 707.3 EATING ROOM |
| 0005 | 707.3 | 612 | LEAD BASED PAINT HAS BEEN FOUND ON THE FOLLOWING INTERIOR SURFACES IN A QUANTITY SUFFICIENT TO CONSTITUTE A HAZARD TO THE HEALTH OF ONE OR MORE OF THE INHABITANTS OF, OR A VISITOR TO, UNDER AGE OF EIGHT YEARS, THE ABOVE PREMISES. SEC. 707.3 EXTERIOR WINDOW SILLS STAIRWELL-1ST TO 2ND FLOOR |
| 0006 | 707.3 | 612 | LEAD BASED PAINT HAS BEEN FOUND ON THE FOLLOWING INTERIOR SURFACES IN A QUANTITY SUFFICIENT TO CONSTITUTE A HAZARD TO THE HEALTH OF ONE OR MORE OF THE INHABITANTS OF, OR A VISITOR TO, UNDER AGE OF EIGHT YEARS, THE ABOVE PREMISES. SEC. 707.3 BOTH WALLS (WEST & EAST) |
| 0007 | 751.3 | 613 | SECTION 701.2 OF THE MUNICIPAL REGULATION, TITLE 14, REQUIRES THAT THE MATERIALS USED IN MAKING REPAIR SHALL BE OF A QUALITY AND KIND SUITABLE FOR THE PURPOSE FOR WHICH IT IS USED, AND EACH REPAIR SHALL BE DONE IN A WORKMANLIKE MANNER. ACCORDINGLY, A LIST OF METHODS, APPROVED BY THE DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS FOR THE CORRECTION OF HAZARDOUS CONDITIONS CAUSED BY LEAD BASED PAINT IS ATTACHED HERETO FOR YOUR GUIDANCE. FRONT RIGHT SLEEPING ROOM EXTERIOR WINDOW SILLS |
| 0008 | 707.1 | 232 | EXPOSED INTERIOR WALL SURFACE(S) NEEDS REPAINTING OR RECOVERING. SEC. 707.1 M.R. |

***FINE SUB-TOTAL**

****OTHER**

****TOTAL FINES**

(CONTINUED)

OF THE
**DISTRICT OF COLUMBIA**

# DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS
## HOUSING AND ENVIRONMENTAL REGULATION ADMINISTRATION
### HOUSING INSPECTION DIVISION
P. O. Box 37200 • Washington, D.C. 20013-7200

## HOUSING DEFICIENCY NOTICE

NOTICE: A recent inspection of the premises listed was made by a representative of this Division in conformance with the District of Columbia Municipal Regulations - Title 14. This notice is to inform you that the items indicated are in violation of existing laws and regulations. Accordingly, you are hereby ordered to correct these violations within the time specified below. If you fail to correct the violations in the time specified, the DCRA Civil Infractions Act of 1985 allows the Department of Consumer and Regulatory Affairs to impose fines for violations like the ones described herewith. Other laws allow for criminal prosecution as an alternative.

_____ 10 DAY(S) _____ FROM DATE OF SERVICE OF THIS NOTICE

BY MAIL:     [  ] Regular     [  ] Certified     [  ] Registered

Person Served: _____

Address where served. _____

Relationship to Resp. Person. _____

Date _____ Time _____ Notice Served by: _____

**IMPORTANT: See reverse side for instructions.**

| NOTICE | DATE | PAGE |
|--------|------|------|
| 26:45  | 07/22/93 | 1 |

**Address of Premises in Violation**

5 AND M FULGUERAS
5400 NEVADA AV., N.W.
WASHINGTON, D.C. 20015

**Inspector's Name**
MR. ROBERT NORTHFOOT

**Signature** _____

**Telephone No.** _____

| Item No. | DCMR Title 14 | VIO CODE | LOCATION AND NATURE OF REPORTED VIOLATION | AMOUNT OF FINE |
|----------|---------------|----------|-------------------------------------------|----------------|
| 0001 | 707.3 | 612 | LEAD BASED PAINT HAS BEEN FOUND ON THE FOLLOWING INTERIOR SURFACES IN A QUANTITY SUFFICIENT TO CONSTITUTE A HAZARD TO THE HEALTH OF ONE OR MORE OF THE INHABITANTS OF, OR A VISITOR TO, UNDER AGE OF EIGHT YEARS. THE ABOVE PREMISES. SEC. 707.3 ENTRANCE FOYER-- DOOR FRAME | 50 |
| 0002 | 707.3 | 612 | LEAD BASED PAINT HAS BEEN FOUND ON THE FOLLOWING INTERIOR SURFACES IN A QUANTITY SUFFICIENT TO CONSTITUTE A HAZARD TO THE HEALTH OF ONE OR MORE OF THE INHABITANTS OF, OR A VISITOR TO, UNDER AGE OF EIGHT YEARS. THE ABOVE PREMISES. SEC. 707.3 HALLWAY | 50 |
| 0003 | 707.3 | 612 | LEAD BASED PAINT HAS BEEN FOUND ON THE FOLLOWING INTERIOR SURFACES IN A QUANTITY SUFFICIENT TO CONSTITUTE A HAZARD TO THE HEALTH OF ONE OR MORE OF THE INHABITANTS OF, OR A VISITOR TO, UNDER AGE OF EIGHT YEARS, THE ABOVE PREMISES. SEC. 707.3 LIVING ROOM WINDOW SILL | 500 |
| 0004 | 707.3 | 612 | LEAD BASED PAINT HAS BEEN FOUND ON THE FOLLOWING INTERIOR SURFACES IN A QUANTITY SUFFICIENT TO CONSTITUTE A HAZARD TO THE HEALTH OF ONE OR MORE OF THE INHABITANTS OF, OR A VISITOR TO, UNDER AGE OF EIGHT YEARS. THE ABOVE PREMISES. SEC. 707.3 | 500 |

# EXHIBIT 3

# GEICO'S PACESETTER PLUS POLICY

## PERSONAL UMBRELLA LIABILITY INSURANCE

### AGREEMENT

We provide the insurance in this policy in return for payment of the premium when due and compliance with the policy provisions.

### PART I -- DEFINITIONS

In this policy, "you" and "your" mean the "named insured" in the declarations and spouse if a resident of your household. "We", "us" and "our" mean the "Government Employees Insurance Company." Other words are defined as follows:

1.  "Auto" means a vehicle as defined in your primary insurance policy.

2.  "Business" includes full-time or part-time trades, professions or occupations.

3.  "Business Property" means:

    A.  any property on which a business is conducted; and
    B.  any property containing more than two residential units.

4.  "Damages" means the total of:

    A.  damages an insured must pay:

        (1)  legally; or
        (2)  by agreement with our written consent;

        because of personal injury or property damage covered by this policy.

    B.  reasonable expenses an insured incurs at our request in the:

        (1)  investigation;
        (2)  defense; and
        (3)  settlement;

        of a claim or suit because of personal injury or property damage covered by this policy.

    C.  "Damages" does not include:

        (1)  salaries of an insured's regular employees; or
        (2)  expenses payable under Part V. of this policy; or
        (3)  punitive damages.

5.  "Insured" means you and:

    A.  the following residents of your household:

        (1)  your relatives; and
        (2)  a person under age 21 in the care of a person named above;

        but as respects autos and watercraft only as stated below.

    B.  a person using an auto or watercraft:

        (1)  owned by;
        (2)  loaned to; or
        (3)  hired for use;

        by you or on your behalf; and with your permission.

    C.  an insured using other autos or watercraft (with permission) not:

        (1)  owned by; or
        (2)  furnished for the regular use of:;

        any insured as defined in 5.A. above.

    D.  The following are not insureds:

        (1)  the owner or lessor (or their agents or employees) of:

            (a)   an auto;
            (b)   recreational vehicle; or
            (c)   watercraft;

        loaned to or hired for use by you or on your behalf.

        (2)  a person (not you) using autos or watercraft while employed in the business of:

| (a) | selling; | (e) | parking; |
|---|---|---|---|
| (b) | servicing; | (f) | docking; |
| (c) | repairing; | (g) | mooring; or |
| (d) | maintaining; | (h) | storing |

        autos or watercraft. This includes a person (not you) or organization employing or engaging a person using the autos or watercraft in the above activities.

6.   "Occurrence" means:

    A.  an accident or event; including

    B.  a continuous or repeated exposure to conditions;

    which results in personal injury or property damage neither expected nor intended by you.

7.   "Personal injury" means:

    A.  mental or bodily injury, shock, sickness, disease or death including care and loss of services; or

    B.  injury arising out of:

        (1)  false arrest, detention, imprisonment, or prosecution; and

        (2)  libel, slander, defamation, humiliation, or a publication or utterance in violation of a person's right of privacy not arising out of any business pursuit of any insured; and

        (3)  wrongful entry or eviction, or other invasion of the right of private occupancy.

8.   "Property Damage" means damage to or loss of use of tangible property.

9.   "Primary insurance" means insurance:

    A.  for which a minimum required liability limit is shown on the declarations; and

    B.  which is payable on behalf of an insured for liability for personal injury or property damage; and

    C.  which must be maintained as a condition of the Pacesetter Plus policy.

10.  "Retained limit" is the amount of any damages an insured must pay for any occurrence resulting in personal injury or property damage which is not covered by your primary insurance. The retained limit is as shown in item II of the declarations.

11.  "Declarations" wherever used in this policy, means the declarations page or pages for this Pacesetter Plus policy.

12.  "Day-care" means the care of persons other than an insured or relative, performed by an insured or an employee of an insured for monetary or other compensation. Mutual exchange of day-care services is not considered as compensation.

Any terms that are not specifically defined in this policy will follow the definitions of your primary insurance policy.

## PART II -- COVERAGE

We pay damages on behalf of an insured arising out of an occurrence, subject to the terms and conditions of this policy.

## PART III -- EXCLUSIONS

We do not cover damages resulting from:

1. Personal injury to a person eligible for payments voluntarily provided by an insured or required to be provided under:

    A. workers' compensation laws;
    B. non-occupational disability laws; or
    C. occupational disease laws.

2. The ownership, maintenance, use, loading or unloading of any aircraft. Model or hobby aircraft are not excluded if not designed to carry people or cargo.

3. The rendering of or failure to render professional services.

4. Acts committed by or at an insured's direction with intent to cause personal injury or property damage. This exclusion does not apply to personal injury or property damage resulting from an act committed by an insured to protect persons and property from injury or damage. This exclusion also does not apply to Part I., Item 7.B.

5. Business pursuits or business property of an insured unless covered by primary insurance described in the declarations. Our coverage is no broader than the primary insurance, except for our liability limit.

6. The ownership, maintenance, use, loading or unloading of any watercraft owned by an insured. This exclusion does not apply:

    A. if, on this policy's effective date, the watercraft is covered by primary insurance and a premium is shown in the declarations; or

    B. if we are informed within 30 days after the watercraft is obtained and is covered by primary insurance and an additional premium is paid to us; or

    C. while the watercraft is stored.

7. Property damage to:

    A. property owned by an insured; or

    B. aircraft or watercraft rented to, used by, or in the care of an insured; or

    C. property rented to, used by, or in the care of an insured.

8. Personal injury or property damage for which an insured under this policy is also insured under a nuclear energy liability policy. This includes a policy which would cover damages but for its termination because the limits of liability were exhausted. A nuclear energy liability policy is a policy issued by:

    A. Nuclear Energy Liability Insurance Association;
    B. Mutual Atomic Energy Liability Underwriters;
    C. Nuclear Insurance Association of Canada;

    or any of their successors.

9. Liability arising from membership on a board of directors, or as an officer of an organization. Charitable, religious or civic non-profit organizations are covered.

10. Personal injury to any insured.

11. The transmission of a communicable disease by an insured.

12. Personal injury or property damage resulting from an uninsured or underinsured motorist claim unless a premium is shown for the uninsured or underinsured motorist coverage in the declarations.

13. Day-care services unless covered by primary insurance. When coverage is provided for day-care services, the coverage does not apply to damages arising out of:

    A. sexual molestation;
    B. corporal punishment;
    C. physical or mental abuse;

    inflicted upon any person by or at the direction of:

    (1) an <u>insured</u>;
    (2) an <u>insured's</u> employee;
    (3) any other person involved in any way in the <u>day care</u> enterprise.

14.  The use of watercraft in any official or prearranged race or speed test.

## PART IV -- LIMITS OF LIABILITY

Regardless of the number of <u>insureds</u>, claims or injured persons, the most <u>we</u> pay as damages resulting from one <u>occurrence</u>, including <u>damages</u> for care and loss of services, shall not exceed the amount in Item 1. of the <u>declarations</u>, subject to the following:

1.  If both <u>primary insurance</u> and this policy cover an <u>occurrence</u>, <u>we</u> pay only those <u>damages</u> which exceed the liability limits in Item V. of the <u>declarations</u>.

2.  If <u>primary insurance</u> is not in force at the time of loss, or its liability limits are less than shown in Item V. of the <u>declarations</u>, <u>we</u> pay only those <u>damages</u> which exceed the liability limits in Item V. of the <u>declarations</u>.

3.  If a primary insurer does not pay because of:

    A.  bankruptcy;
    B.  insolvency;
    C.  an <u>insured's</u> failure to comply with a provision of <u>primary insurance</u>;

    <u>we</u> pay only those <u>damages</u> which exceed the liability limits in Item V. of the <u>declarations</u>.

4.  If an <u>occurrence</u> results in <u>personal injury</u> or <u>property damage</u>, and:

    A.  is not covered under the terms and conditions of <u>your primary insurance</u>, but
    B.  is covered by this policy;

    <u>we</u> pay only those <u>damages</u> which exceed <u>your</u> <u>retained limit</u>.

This insurance applies separately to each <u>insured</u>. This provision shall not increase <u>our</u> liability limit for one <u>occurrence</u>.

## PART V -- DEFENSE OF SUITS NOT COVERED BY OTHER INSURANCE

1.  If the required <u>primary insurance</u>:

    A.  is in force but does not cover <u>personal injury</u> or <u>property damage</u> due to the nature of the claim against <u>you</u>, and this Policy does provide coverage, <u>we</u> will provide defense of suits in excess of the <u>retained limit</u>.

    B.  is in force but does not cover <u>personal injury</u> or <u>property damage</u> for any other reason, and this Policy does provide coverage, <u>we</u> have the right to provide defense. But <u>we</u> are not obligated to defend unless the <u>personal injury</u> or <u>property damage</u> alleged in the suit exceeds the required limit of <u>primary insurance</u> shown in Item V. of the <u>declarations</u>.

2.  When <u>we</u> provide defense, <u>we</u> will:

    A.  defend an <u>insured</u> against a claim or suit for <u>damages</u>. <u>We</u> may investigate and settle a claim or suit <u>we</u> feel is appropriate.

    B.  pay costs taxed against an <u>insured</u> in a suit <u>we</u> defend;

    C.  pay interest accruing after a judgment is entered in a suit <u>we</u> defend; <u>our</u> duty to pay interest ends when <u>we</u> offer to pay that part of the judgment which does not exceed <u>our</u> liability limit;

    D.  pay premiums on bonds required in a suit <u>we</u> defend; however, <u>we</u> will pay premiums for appeal bonds only for judgments from which <u>we</u> authorize an appeal. The bond amounts shall not exceed <u>our</u> liability limit. <u>We</u> pay the cost of bail bonds required of an <u>insured</u> because of an accident or a traffic law violation. <u>We</u> are not required to apply for or furnish bonds;

    E.  pay reasonable expenses an <u>insured</u> incurs at <u>our</u> request in assisting <u>us</u> in the investigation or defense of a claim or suit. Expenses include actual loss of earnings (not other income) up to $100 a day or $5,000 total.

    <u>We</u> pay amounts incurred, except settlement of claims or suits for <u>damages</u>, in addition to <u>our</u> liability limit. An <u>insured</u> shall promptly repay <u>us</u> for damages <u>we</u> paid within the <u>retained limit</u>.

## PART VI -- CONDITIONS

1.  **Duties after Occurrence, Claim or Suit.**

A. If an <u>occurrence</u> is likely to involve <u>us</u> under this policy, an <u>insured</u> shall promptly advise us of:

    (1) how, when and where the <u>occurrence</u> took place; and

    (2) names and addresses of the injured and all witnesses.

B. If information regarding a claim is received or if legal action is begun, an <u>insured</u> must immediately send <u>us</u> a copy of every:

    (1) notice;
    (2) demand;
    (3) report;
    (4) summons; or
    (5) other legal papers.

C. An <u>insured</u> must cooperate with <u>us</u> in the investigation, defense and settlement of a claim or suit.

D. An <u>insured</u> must comply with the policy provisions of the <u>primary insurance</u>.

2. **Defense and Settlement.** Except as provided in Part V., <u>we</u> are not required to take charge of the investigation, defense or settlement of a claim or suit. <u>We</u> have the right at any time to join an <u>insured</u> or the primary insurers in the investigation, defense, and settlement of a claim or suit. If the <u>primary insurance</u> limit is paid, <u>we</u> have the option to defend a claim or suit. <u>We</u> may investigate and settle a claim or suit which <u>we</u> feel is appropriate.

3. **Appeals.** <u>We</u> may appeal a judgment in excess of the applicable <u>primary insurance</u> limit or the <u>retained limit</u>. <u>We</u> pay all:

A. costs;
B. taxes;
C. expenses; and
D. interest

for which an <u>insured</u> is legally liable and which are not covered by a <u>primary insurance</u> policy. <u>Our</u> liability for <u>damages</u> does not exceed <u>our</u> liability limit for one <u>occurrence</u> plus the cost and expense of the appeal.

4. **Suit Against Us.** No action shall be brought against <u>us</u>:

A. unless an <u>insured</u> has complied with the policy provisions; and

B. until the obligation of an <u>insured</u> has been determined by trial and judgment or by agreement signed by <u>us</u>.

No one shall have a right to join <u>us</u> as a party to an action against an <u>insured</u>.

5. **Other Insurance.** This insurance is excess over any insurance which covers a loss under:

A. <u>your primary insurance</u>; or

B. any other insurance policies.

6. **Our Right to Recover Payment.** If payment is made by <u>us</u>, <u>we</u> will join an <u>insured</u> and any primary insurer in exercising an <u>insured</u>'s rights of recovery against any party. An <u>insured</u> shall not prejudice such rights after loss. Recoveries shall be made in the following order:

A. repay the parties (including an <u>insured</u>) who paid in excess of <u>our</u> liability limit;

B. repay <u>us</u> the amount <u>we</u> paid; and

C. repay the parties (including an <u>insured</u>) to whom this insurance is excess, if they are entitled to any remainder.

A different distribution may be made to settle a claim or suit if all parties agree.

Reasonable expenses of obtaining recovery shall be divided among all parties in the ratio of their losses for which recovery is sought.

7. **Assignment.** <u>Your</u> rights and duties under this policy shall not be assigned without <u>our</u> written consent.

8. **Policy Period and Territory.** <u>We</u> cover <u>personal injury</u> and <u>property damage</u> which take place anywhere during the time this policy is in force. If <u>you</u> travel outside the United States, <u>you</u> must maintain the equivalent of <u>your</u> <u>primary insurance</u>. If the minimum benefits <u>we</u> require for <u>your</u> <u>primary insurance</u> are not available, <u>you</u> must obtain the highest legally available limit.

9.  **Termination.**

  A.  Cancellation.

  You may cancel this policy by returning it to us or by notifying us in writing of the cancellation date.  Any return premium will be calculated on a short-rate basis.

  We may cancel this policy for non-payment of premium by notifying you in writing at least 10 days in advance.

  If this policy is not a renewal, and has been in effect less than 60 days, we may cancel for any reason by notifying you in writing at least 30 days in advance.

  If this policy is a renewal, or has been in effect 60 days or more, we may cancel:

  (1)  if there has been a material misrepresentation of fact, made by you or with your knowledge, which if known to us would have caused us not to issue the policy; or

  (2)  if the risk has changed substantially since the policy was issued.  Substantial change in risk includes failure to maintain the required primary insurance.

  If this policy is cancelled, any return premium will be refunded within a reasonable time after the cancellation date.  Payment or tender of unearned premium is not a condition of cancellation.

  B.  Non-Renewal

  If we choose not to renew this policy, we will notify you in writing at least 30 days before the end of the policy period.

  C.  Our notice may be delivered or mailed to you at the address in the declarations.

  D.  Proof of mailing is sufficient proof of notice.

  E.  If any provisions of 9.A., B., C. or D. above are in conflict with the law in your state, we will comply with that law.

10.  **Changes.**  The terms of this policy may not be changed or waived except by endorsement by us.

11.  **Concealment or Fraud.**  We do not provide coverage for an insured who purposely conceals or misrepresents any material fact or circumstance relating to this insurance.

12.  **Death.**  If you or a resident of your household dies, we cover:

  A.  with respect to your property, the person in temporary custody of the property until a legal representative is appointed.

  B.  the legal representative of the deceased but only with respect to the property of the deceased covered under the policy at the time of death.

13.  Any terms of this policy in conflict with the statutes of your state are amended to conform to those statutes.

14.  You will maintain your primary insurance and notify us of any changes in your primary insurance within 30 days.

J. C. Stewart
Secretary            GOVERNMENT EMPLOYEES INSURANCE COMPANY            O. M. Nicely
President

PPUE-11 (12-92)

## PACESETTER AMENDATORY ENDORSEMENT

The following exclusions are added.

Part III - Exclusions

We do not cover damages from:

1.  the eating of paint that has lead in it.

2.  the eating of paint that has lead compounds in it.

3.  the inhalation of paint that has lead in it.

4.  the inhalation of paint that has lead compounds in it.

5.  radon or any other substance that emits radiation.

6.  (including liability imposed by law) the discharge, disposal, release or escape of:

    a.  vapors or fumes.
    b.  gas or oil.
    c.  toxic chemicals, liquids or gas.
    d.  waste materials.
    e.  irritants, contaminants or pollutants.

All other conditions are the same.

PPUE-11 (12-92)

Policy Number:

# EXHIBIT 4

# GOVERNMENT EMPLOYEES INSURANCE COMPANY
## HOME OFFICE, WASHINGTON, D.C. 20076

POLICY NUMBER   H 1313681
POLICY PERIOD FROM        04/25/94        TO        04/25/95

INSURED NAME AND ADDRESS                              MORTGAGEE NAME AND ADDRESS

SALVADOR C FULGUERAS
MARTINIANA T FULGUERAS
5400 NEVADA AVE NW
WASHINGTON DC  20015

*HOMEOWNER*
NEW DECLARATION                      EFFECTIVE        04/25/94

THE RESIDENCE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS UNLESS OTHERWISE STATED BELOW:

RATING INFORMATION – DWELLING CONSTRUCTION:  FRAME  FIRE HYDRANT NOT MORE THAN
1000_____ FEET FROM THE RESIDENCE PREMISES, FIRE DEPARTMENT NOT MORE THAN  5 _____MILES FROM THE RESIDENCE PREMISES.

COVERAGE AT THE ABOVE DESCRIBED LOCATION IS PROVIDED ONLY WHERE A LIMIT OF LIABILIYT IS SHOWN OR A PREMIUM IS STATED.

| SECTION I  COVERAGE | LIMIT OF LIABILITY | PREMIUMS |
|---|---|---|
| A.  DWELLING | 174,900 | |
| B.  OTHER STRUCTURES | 17,490 | |
| C.  PERSONAL PROPERTY | 122,430 | |
| D.  LOSS OF USE | 30,980 | |
| SECTION II | | |
| E.  PERSONAL LIABIITY | 500,000 | EACH OCURRENCE |
| F.  MEDICAL PAY. TO OTHERS- | 1,000 | EACH PERSON |

TOTAL BASIC PREMIUM
TOTAL ADDITIONAL PREMIUMS
TOTAL ANNUAL PREMIUM        $ 690.33

POLICY PERIOD: 12:01 A.M. STANDARD TIME AT THE DESCRIBED LOCATION.

FORMS AND ENDORSEMENTS MADE A PART OF THIS POLICY AT TIME OF ISSUANCE:  NUMBERS(S) AND EDITION DATE(S).
H03  0491, HU60 0991,  HUE7  0986, HUE31 0792, HUE24 0679, HUE29 0491, HO0496 0491, HO0108 0491, HUE32 1192, HUE46 1292, HO0446 0491, HUE12 0683. HO2470 0491,
HO0490 0491,

## INCASE OF LOSS UNDER S
SECTION I, WE COVER ONLY THAT PART OF THE LOSS OVER THE DEDUCTIBLE OF $ 250.00

AGENT
DATE

HO 00 03 04 91

# HOMEOWNERS 3
# SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:

   a. The one family dwelling, other structures, and grounds; or

   b. That part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - Dwelling

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B - Other Structures

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### COVERAGE C - Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1000 on trailers not used with watercraft.

5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms.

7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

   Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

b. Is away from the "residence premises"; and

c. Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

a. Accessories and antennas; or

b. Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land conveyances. This includes:

a. Their equipment and accessories; or

b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

(1) Accessories or antennas; or

(2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in

a. Books of account, drawings or other paper records; or

b. Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D - Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph **b.** below.

a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under **a.** or **b.** will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

**Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under **1.** and **2.** above for no more than two weeks.

 Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

    a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

    b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

    This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

    We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

    a. Your tree(s) felled by the peril of Windstorm or Hail;

    b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

    c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

    provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

    This coverage:

    a. Does not increase the limit of liability that applies to the covered property;

    b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cov trees, shrubs, plants or lawns, on the "residen premises," for loss caused by the following Per Insured Against: Fire or lightning, Explosion, R or civil commotion, Aircraft, Vehicles not own or operated by a resident of the "residence pre ises," Vandalism or malicious mischief or Theft

    We will pay up to 5% of the limit of liability th applies to the dwelling for all trees, shrubs, plar or lawns. No more than $500 of this limit will available for any one tree, shrub or plant. We not cover property grown for "business" pu poses.

    This coverage is additional insurance.

4. **Fire Department Service Charge.** We w pay up to $500 for your liability assumed contract or agreement for fire department charg incurred when the fire department is called save or protect covered property from a Peril I sured Against. We do not cover fire departme service charges if the property is located with the limits of the city, municipality or protectic district furnishing the fire department response.

    This coverage is additional insurance. N deductible applies to this coverage.

5. **Property Removed.** We insure covered pro erty against direct loss from any cause while b ing removed from a premises endangered by Peril Insured Against and for no more than days while removed. This coverage does n change the limit of liability that applies to t property being removed.

6. **Credit Card, Fund Transfer Card, Forge and Counterfeit Money.**

    We will pay up to $500 for:

    a. The legal obligation of an "insured" to p because of the theft or unauthorized use credit cards issued to or registered in "insured's" name;

    b. Loss resulting from theft or unauthorized u of a fund transfer card used for deposit, with drawal or transfer of funds, issued to or regi tered in an "insured's" name;

    c. Loss to an "insured" caused by forgery or a teration of any check or negotiable instrumer and

    d. Loss to an "insured" through acceptance good faith of counterfeit United States Canadian paper currency.

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

We do not cover use of a credit card or fund transfer card:

**a.** By a resident of your household;

**b.** By a person who has been entrusted with either type of card; or

**c.** If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

**a.** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**b.** If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

**c.** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

**7. Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

**8. Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

**a.** Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

**b.** Hidden decay;

**c.** Hidden insect or vermin damage;

**d.** Weight of contents, equipment, animals or people;

**e.** Weight of rain which collects on a roof; or

**f.** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items **b., c., d., e.** and **f.** unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

**9. Glass or Safety Glazing Material.**

We cover:

**a.** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

**b.** Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

   a. **Fire or lightning.**

   b. **Windstorm or hail.**

      This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

      This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

   c. **Explosion.**

   d. **Riot or civil commotion.**

   e. **Aircraft,** including self-propelled missiles and spacecraft.

   f. **Vehicles.**

   g. **Smoke,** meaning sudden and accidental damage from smoke.

      This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

   h. **Vandalism or malicious mischief.**

   i. **Falling objects.**

      This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

   j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

   k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

      This peril does not include loss:

      (1) To the system or appliance from which the water or steam escaped;

      (2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

      (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

      In this peril, a plumbing system does not include a sump, sump pump or related equipment.

   l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

      We do not cover loss caused by or resulting from freezing under this peril.

   m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

      This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

      (1) Maintain heat in the building; or

      (2) Shut off the water supply and drain the system and appliances of water.

   n. **Sudden and accidental damage from artificially generated electrical current.**

      This peril does not include loss to a tube, transistor or similar electronic component.

   o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

   The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

---

## SECTION I - PERILS INSURED AGAINST

**COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

2. Caused by:

Copyright, Insurance Services Office, Inc., 1990

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance; or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water;

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1) Fence, pavement, patio or swimming pool;

(2) Foundation, retaining wall, or bulkhead; or

(3) Pier, wharf or dock;

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e. Any of the following:

(1) Wear and tear, marring, deterioration;

(2) Inherent vice, latent defect, mechanical breakdown;

(3) Smog, rust or other corrosion, mold, wet or dry rot;

(4) Smoke from agricultural smudging or industrial operations;

(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

(7) Birds, vermin, rodents, or insects; or

(8) Animals owned or kept by an "insured."

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water escaped.

3. Excluded under Section I - Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

## COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. Fire or lightning.

2. Windstorm or hail.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. Explosion.

4. Riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke, meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. Vandalism or malicious mischief.

9. Theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

a. Committed by an "insured";

b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

This peril does not include loss caused by theft that occurs off the "residence premises" of:

a. Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

c. Trailers and campers.

10. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

---

## SECTION I - EXCLUSIONS

---

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

   b. **Earth Movement**, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

   (1) Fire;

   (2) Explosion; or

   (3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

   ensues and then we will pay only for the ensuing loss.

   This exclusion does not apply to loss by theft.

   c. **Water Damage**, meaning:

   (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

   (2) Water which backs up through sewers or drains or which overflows from a sump; or

(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

h. **Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

---

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. Give prompt notice to us or our agent;

b. Notify the police in case of loss by theft;

c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

---

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in 2.e. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500;

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

Copyright, Insurance Services Office, Inc., 1990

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

 Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

**13.No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14.Nuclear Hazard Clause.**

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

   c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**15.Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**16.Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II - LIABILITY COVERAGES

**COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

**COVERAGE F - Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by the "insured";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

    Copyright, Insurance Services Office, Inc., 1990    HO 00 03 04 91

c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

(1) On an occasional basis if used only as a residence;

(2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(3) In part, as an office, school, studio or private garage;

d. Arising out of the rendering of or failure to render professional services;

e. Arising out of a premises:

(1) Owned by an "insured";

(2) Rented to an "insured"; or

(3) Rented to others by an "insured";

that is not an "insured location";

f. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

(2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

(1) A trailer not towed by or carried on a motorized land conveyance.

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) Not owned by an "insured"; or

(b) Owned by an "insured" and on an "insured location";

(3) A motorized golf cart when used to play golf on a golf course;

(4) A vehicle or conveyance not subject to motor vehicle registration which is:

(a) Used to service an "insured's" residence;

(b) Designed for assisting the handicapped; or

(c) In dead storage on an "insured location";

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

(a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

(c) One or more outboard engines or motors with 25 total horsepower or less;

(d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

(e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

(i) You acquire them prior to the policy period; and

(a) You declare them at policy inception; or

(b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

(ii) You acquire them during the policy period.

This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:

(a) Less than 26 feet in overall length;

(b) 26 feet or more in overall length, not owned by or rented to an "insured."

HO 00 03 04 91

   (3) That are stored;

h. Arising out of:

   (1) The ownership, maintenance, use, loading or unloading of an aircraft;

   (2) The entrustment by an "insured" of an aircraft to any person; or

   (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

   (1) Undeclared war, civil war, insurrection, rebellion or revolution;

   (2) Warlike act by a military force or military personnel; or

   (3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g., and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

2. **Coverage E - Personal Liability,** does not apply to:

a. Liability:

   (1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

   (2) Under any contract or agreement. However, this exclusion does not apply to written contracts;

   (a) That directly relate to the ownership maintenance or use of an "insured location"; or

   (b) Where the liability of others is assumed by the "insured" prior to an "occurrence";

unless excluded in (1) above or elsewhere in this policy;

b. "Property damage" to property owned by the "insured";

c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

d. "Bodily injury" to any person eligible to receive any benefits:

   (1) Voluntarily provided; or

   (2) Required to be provided;

by the "insured" under any:

   (1) Workers' compensation law;

   (2) Non-occupational disability law; or

   (3) Occupational disease law;

e. "Bodily injury" or "property damage" for which an "insured" under this policy:

   (1) Is also an insured under a nuclear energy liability policy; or

   (2) Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

   (1) American Nuclear Insurers;

   (2) Mutual Atomic Energy Liability Underwriters;

   (3) Nuclear Insurance Association of Canada;

or any of their successors; or

f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F - Medical Payments to Others,** does not apply to "bodily injury":

a. To a "residence employee" if the "bodily injury":

   (1) Occurs off the "insured location"; and

   (2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

Copyright, Insurance Services Office, Inc., 1990
HO 00 03 04 91

b. To any person eligible to receive benefits:

   (1) Voluntarily provided; or

   (2) Required to be provided:

   under any:

   (1) Workers' compensation law;

   (2) Non-occupational disability law; or

   (3) Occupational disease law;

c. From any:

   (1) Nuclear reaction;

   (2) Nuclear radiation; or

   (3) Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

   (4) Any consequence of any of these; or

d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

   We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I of this policy;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:

      (1) A "business" engaged in by an "insured";

      (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or

      (3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

      This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

      (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

      (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

   This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

Copyright, Insurance Services Office, Inc., 1990

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);

2. Condition **1**. Policy Period, under SECTIONS I AND II - CONDITIONS.

---

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and "insured";

      (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

      (3) Names and addresses of any claimants and witnesses;

   b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

   c. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

      (3) With the conduct of suits and attend hearings and trials; and

      (4) To secure and give evidence and obtain the attendance of witnesses;

   d. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

   e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.**

   The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II - CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

   relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (b) If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

# HOMEOWNER POLICY OUTLINE

This outline is provided for information purposes only. It does not replace or modify the insurance contract in any way. **READ YOUR INSURANCE POLICY CAREFULLY** to understand all its provisions.

Your policy is designed to provide coverage for your home, other structures on your property, your personal belongings, loss of use of your home, personal liability, and medical payments to others.

Please review your policy declarations for specific **dollar limits** that apply to each coverage, the **deductible** that applies to property losses, the policy premium, and a description of endorsements that are attached to your policy. Special additional dollar limitations apply to some types of property for which coverage is provided. Be sure to review SECTION I of your policy to familiarize yourself with these limits as well as the types of property **not covered.**

## SECTION I - PROPERTY COVERAGE

**COVERAGE A**  Covers your dwelling including attached structures. Coverage A applies to real property owned by you.

**COVERAGE B**  Covers private, non business structures at your residence detached from the dwelling, such as a garage, fence, inground swimming pool or guest house.

**COVERAGE C**  Covers your personal property such as clothes and furniture. Special **dollar limitations** apply to property such as $1000 on jewelry and furs, for the peril of theft and $200 on cash. These limits as well as excluded property such as motorized vehicles are described in Section I of your policy. Losses on personal property are settled on a **depreciated** basis unless you purchase **optional** replacement cost coverage. (HO-04-90)

**COVERAGE D**  Loss of Use coverage provides for payments to you if you temporarily cannot live in your residence because of a covered loss to your dwelling.

**Perils Insured Against:**  The HO-00-03 special form policy insures the **buildings** against direct loss from any peril not specifically excluded. Your **personal property** is insured against the specifically named perils in the policy only. Please review Section I of your policy for a list of the named perils.

**Property Exclusions:**  Specific exclusions to property coverage are stated in SECTION I of the policy. Examples are loss from earth movement, **damage from flood** or other surface or wind driven water, neglect, war, nuclear hazard and intentional loss. **NOTE** - GEICO can provide you with a separate **flood insurance policy** in eligible locations. Please call or write us for further information.

**Section II - Liability Coverages:**  Section II of your policy covers you for your legal liability for bodily injury or property damage to others, arising out of your residence or caused by you and family members who live with you. Business pursuits, motor vehicles, and certain types of watercraft are examples of **exclusions** from coverage.

After you have read this outline and reviewed your policy you may feel that you need additional coverage or increased limits for present coverages to be fully protected. Your policy can be tailored to meet your specific additional insurance needs.

Some of the more common **optional** coverages include:

> **Personal property** floater for articles such as jewelry, furs, silverware, fine arts and collectibles. (HO-04-61)
> Replacement cost coverage for personal property. (HO-04-90)
> Liability coverage for home business pursuits. Liability coverage for other properties you may own.
> Earthquake insurance. (HO-04-54)

GEICO also provides separate policies for flood insurance, watercraft, and seasonal or rental properties you may own.

**Please call our 24-hour service number 800-841-3000 to discuss these or any other coverage needs you may have.**

ENDORSEMENT
# GOVERNMENT EMPLOYEES INSURANCE COMPANY
A Shareholder Owned Company Not Affiliated with the U.S. Government
## HOME OFFICE • WASHINGTON, D.C. 20076
The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number

Effective Date

## SECTION II — ADDITIONAL COVERAGES

Under Section II — Additional Coverages, the following clause is added:

5. **Property Damage Coverage for Military Personnel and Federal Government Employees.** If an **insured** is:

   a. a U.S. Government employee; or

   b. a member of the U.S. Military,

   we will pay for **property damage** to U.S. Government property, for which such **insured** is responsible under applicabl government rules or regulations. Payment for such **property damage** will be at replacement cost.

   Our limit of liability, per occurrence, shall not exceed two months basic pay of the **insured** as of the time of th occurrence.

   We will not pay for **property damage** to:

   a. Aircraft;

   b. **Motor Vehicles,** including vehicles not designed for travel on public roads or subject to registration;

   c. Watercraft; or

   d. Weapons.

   We will not pay for **property damage:**

   a. to the extent of any amount payable under Section I of this policy; or

   b. caused intentionally by an **insured** who is 13 years of age or older.

Countersigned by Authorized Representative

HUE-31 (7-92)

## SUPPLEMENTAL LIABILITY PROVISION

**Section II - Exclusions**

Under Coverage E, Personal Liability and Coverage F, Medical Payments to Others, Item (a) is deleted and replaced by the following in all forms:

(a)  Which is expected or intended by an "insured."

R. A. Phillips

O. M. Nicely

Secretary  •  GOVERNMENT EMPLOYEES INSURANCE COMPANY  •  President

HUE-31 (7-92)

ENDORSEMENT
# GOVERNMENT EMPLOYEES INSURANCE COMPANY
A Shareholder Owned Company ·· Not Affiliated with the United States Government

**HOME OFFICE ● WASHINGTON, D.C. 20076**

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number

Effective Date

## COVERAGE ADJUSTMENT ENDORSEMENT

**ADJUSTMENT IN LIMITS OF LIABILITY**

You agreed to permit us to adjust the limits of liability shown in the Declarations for Coverage A (Dwelling), at each policy anniversary or renewal, to reflect the rate of change in the Boeckh residential construction cost index, as published by the American Appraisal Company. We will round the resulting amount to the nearest $500.

These adjustments in the limit of liability for Coverage A (Dwelling) will result in an adjustment in the limits of liability for Coverages B (Other Structures), C (Personal Property), and D (Loss of Use), in accordance with our Manual of Homeowners Rules and Rates.

We will not reduce any limits of liability to less than the limits shown in the Declarations at the time this policy was issued, without first obtaining your consent to the reduction.

You have the right to refuse any of these changes in limits of liability prior to their effective dates, and the right to change limits of liability at any time.

We will calculate any change in premium, resulting from these changes in limits, on the basis of the Homeowners Rules and Rates in use by us at the time of the change in limits.

We have the right to substitute another cost index or to withdraw this agreement to adjust limits, as of an anniversary or renewal date, by giving you at least 30 days notice of our intention to do so, provided this substitution or withdrawal applies to all similar policies we issue.

All other provisions of this policy apply.

_____

Countersigned by Authorized Representative

HUE-24 (6-79)

HUE-29 (04-91)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## REFRIGERATED PROPERTY COVERAGE

The following coverage is added for no additional premium.  We insure up to $500, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

1. Interruption of electrical service to the refrigeration unit.  The interruption must be caused by damage to the generating or transmitting equipment; or

2. Mechanical failure of the unit storing the property.

Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.

All other provisions of this policy apply.

HUE-29 (04-91)

This endorsement does not increase the limit of liability for Coverage C - Personal Property.

The Section I - Power Failure exclusion does not apply to this coverage.

Special Deductible

The following deductible applies to covered loss to refrigerated property:

We will pay only that part of the loss that exceeds $100.  No other deductible applies to this coverage.

HO 04 96 04 91

## NO SECTION II - LIABILITY COVERAGES FOR
### HOME DAY CARE BUSINESS
## LIMITED SECTION I - PROPERTY COVERAGES FOR
### HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II - Liability Coverages because a "business" of an "insured" is excluded under exclusion **1.b.** of Section II - Exclusions;

2. Does not provide Section I - Coverage B coverage where other structures are used in whole or in part for "business";

3. Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C - Special Limits of Liability - item **8.** imposes that limit on "business" property on the "residence premises." (Item **8.** corresponds to item **5.** in Form **HO 00 08.**);

4. Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C - Special Limits of Liability - item **9.** imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item **9.** does not apply to adaptable electronic apparatus as described in Special Limit of Liability items **10.** and **11.** (Items **9.**, **10.** and **11.** correspond to items **6.**, **7.** and **8.** respectively in Form **HO 00 08.**)

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

Copyright, Insurance Services Office, Inc., 1990

HO 01 08 04 91

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPECIAL PROVISIONS - DISTRICT OF COLUMBIA

**SECTION II - CONDITIONS**

1.  **Limit of Liability,** is deleted and replaced by the following:

1.  **Limit of Liability.** Except as noted in the special limit below, our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence."

    **Special Limit of Liability:** Our total liability under coverage E is $10,000 for damages for which an "insured" is legally liable because of vicarious liability, whether or not statutorily imposed, for the actions of a child or minor, if such vicarious liability is not otherwise excluded. This special limit does not increase the Coverage E Limit of Liability.

    Our applicable limit of liability is the same regardless of the number of "insureds," claims made or persons injured.

    Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

**SECTIONS I AND II - CONDITIONS**

5.  **Cancellation.** Paragraph **b.** is deleted and replaced by the following:

    **b.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

    Proof of mailing will be sufficient proof of notice.

    **(1)** When this policy has been in effect for 30 days or less and is not a renewal with us, we may cancel for any reason by letting you know at least 30 days before the date cancellation takes effect.

    **(2)** When this policy has been in effect for more than 30 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons by letting you know at least 30 days before the date cancellation takes effect:

    **(a)** You have not paid a premium due;

    **(b)** You have made a material and willful misstatement or omission of fact to us in connection with any application to or claim against us;

    **(c)** Your property or other interest has been transferred to another person, unless the transfer is permissible under the terms of the policy; or

    **(d)** Your property or its interest or use has materially changed with respect to its insurability.

All other provisions of this policy apply.

HO 01 08 04 91

Copyright, Insurance Services Office, Inc., 1992

**GOVERNMENT EMPLOYEES INSURANCE COMPANY**
**ONE GEICO PLAZA, WASHINGTON, D.C. 20076**

HOMEOWNERS
HUE-32 (11-92)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WATER BACK UP AND SUMP OVERFLOW

1. We insure, up to $5,000 for direct physical loss, not caused by the negligence of any "insured," to property covered under Section I caused by:

   a. water which backs up through sewers or drains; or

   b. water which overflows from a sump even if such overflow results from the mechanical breakdown of the sump pump. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

   This endorsement does not increase the limits of liability for Coverages A, B, C or D stated in the policy Declarations.

2. Special Deductible.

   The following deductible provision replaces any other deductible provision in the policy with respect to loss covered under this endorsement.

   We will pay only that part of the loss which exceeds $250. No other deductible applies to this coverage. This deductible does not apply with respect to Coverage D - Loss of Use.

3. Section I - Perils Insured Against

   In Form HO 00 03, paragraph 2.e.(2) under Coverage A - Dwelling and Coverage B - Other Structures is deleted, with respect to coverage for loss caused by overflow of sumps, and replaced by the following:

   (2) inherent vice, latent defect;

   In Form HO 00 15, this is subparagraph 1.b.(4)(b); in HO 17 32, this is subparagraph 2.e.(2).

4. Section I - Exclusions

   3. **Water Damage** is deleted and replaced by the following:

   3. **Water Damage,** meaning:

      a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; or

      b. Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

      Direct loss by fire or explosion resulting from water damage is covered.

   (In Form HO 00 03, this is item 1.c.)

   All other provisions of this policy apply.

Contains copyrighted material of Insurance Services Office, Inc., 1992, used with their permission.

HUE-46(12-92)

## HOMEOWNERS AMENDATORY ENDORSEMENT

The following exclusions are added.

Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to "bodily injury" or "property damage" arising:

1. out of the eating of paint that has lead in it.

2. out of the eating of paint that has lead compounds in it.

3. out of the inhalation of paint that has lead in it.

4. out of the inhalation of paint that has lead compounds in it.

5. from radon, or any other substance that emits radiation.

6. in any manner (including liability imposed by law) from the discharge, disposal, release or escape of:

    a. vapors or fumes.
    b. gas or oil.
    c. toxic chemicals, liquids or gas.
    d. waste materials.
    e. irritants, contaminants or pollutants.

All other conditions are the same.

HUE-46(12-92)

HUE-46(12-92)

## HOMEOWNERS AMENDATORY ENDORSEMENT

HO 04 46 04 91

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**INFLATION GUARD**

For an additional premium, the limits of liability for Coverages A, B, C and D will be increased annually by ____%*, applied pro rata during the policy period.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

**HO 04 46 04 91**          Copyright, Insurance Services Office, Inc., 1990

POLICY ENDORSEMENT

# GOVERNMENT EMPLOYEES INSURANCE COMPANY

A Shareholder Owned Company Not Affiliated with the U.S. Government

### HOME OFFICE • WASHINGTON, D.C. 20076

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number

Effective Date

## PROTECTIVE DEVICES CREDIT ENDORSEMENT

We agree to provide you with a premium credit as shown on the declarations page for the existence in your residence premises of the fire protective or theft control devices so listed on the declarations page. You agree to maintain such devices in working order and promptly notify us of any change in any device for which a credit is shown.

This endorsement forms a part of the captioned policy issued by the Government Employees Insurance Company and is effective as of 12:01 A.M. Standard Time on the effective date of the endorsement.

Countersigned by Authorized Representative

HUE-12 (6-83)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL RESIDENCE RENTED TO OTHERS
1, 2, 3 or 4 Families

**SECTION II**

For an additional premium under Coverage E - Personal Liability and Coverage F - Medical Payments to Others, the premises listed below are included in the definition of "insured location."

With respect to the premises listed below, Exclusion **1.c.**, under Section II Exclusions - Coverage E - Personal Liability and Coverage F - Medical Payments to Others, does not apply.

**Location***                                    **Number of Families***

☐ 1          ☐ 2          ☐ 3          ☐ 4

*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

HO 24 70 04 91          Copyright, Insurance Services Office, Inc., 1990

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PERSONAL PROPERTY REPLACEMENT COST

### SECTION I

For an additional premium, covered losses to the following property are settled at replacement cost at the time of loss:

  **a.** Coverage C - Personal Property;

  **b.** If covered in this policy, awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings.

Personal Property Replacement Cost coverage will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy:

  **a.** Jewelry;

  **b.** Furs and garments trimmed with fur or consisting principally of fur;

  **c.** Cameras, projection machines, films and related articles of equipment;

  **d.** Musical equipment and related articles of equipment;

  **e.** Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry; and

  **f.** Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost coverage will not apply to other classes of property separately described and specifically insured.

### 1. PROPERTY NOT ELIGIBLE

Property listed below is not eligible for replacement cost settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

  **a.** Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

  **b.** Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

  **c.** Articles not maintained in good or workable condition.

  **d.** Articles that are outdated or obsolete and are stored or not being used.

### 2. REPLACEMENT COST

The following loss settlement procedure applies to all property insured under this endorsement:

  **a.** We will pay no more than the least of the following amounts:

    **(1)** Replacement cost at the time of loss without deduction for depreciation;

    **(2)** The full cost of repair at the time of loss;

    **(3)** The limit of liability that applies to Coverage C, if applicable;

    **(4)** Any applicable special limits of liability stated in this policy; or

    **(5)** For loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.

  **b.** When the replacement cost for the entire loss under this endorsement is more than $500, we will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is complete.

  **c.** You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1990

# EXHIBIT 5

SUPERIOR COURT OF THE
DISTRICT OF COLUMBIA
CIVIL DIVISION

Jaimeon Anthony Brooks, a minor,        *
by his mother,
**Zeretia Brooks**                           *
1805 North Capitol Street, N.E.
Washington, D.C.  20002                 *

    **and**                                 *

Zeretia Brooks, individually            *     Civil Action No. _____
1805 North Capitol Street, N.E.
Washington, D.C.  20002                 *

    Plaintiffs                              

    v.                                      *

Salvador C. Fulgueras                    *
5400 Nevada Avenue, N.W.
Washington. D.C. 20015                   *

    **and**                                 *

Martiniana T. Fulgueras                  *
5400 Nevada Avenue, N.W.
Washington, D.C. 20015                   *

    Defendants                               *

****************************************************************************

## COMPLAINT – LEAD PAINT POISONING

    Come now the Plaintiffs, by their attorney, Saul E. Kerpelman &

Associates, P.A., and sue the Defendants.

Jurisdiction of this court is founded on the Code of Laws of the District of

Columbia and the District of Columbia Municipal Regulations, other public local

laws of the District of Columbia, and laws of the United States.

## COUNT ONE
### (Negligence – Defendant Salvador C. Fulgueras)

1.  For that all of the times herein mentioned the Defendant, Salvador C.

Fulgueras, owned and exclusively possessed and controlled, by the use of agents,

servants or employees, a dwelling house erected on a lot of ground known as 1401

G Street, N.E., in the District of Columbia, which the Defendant either individually or

by agents, servants, or employees, managed, supervised, maintained, and rented

to tenants.

2.  It is alleged alternatively that the Defendant, if sued in the capacity of a present

or former corporate officer of a corporation which owned the said property, did

personally participate in, inspire, and/or induce the tortious acts or omissions

complained of herein.

3.  The mother of the infant Plaintiff, Zeretia Brooks, was a tenant of the Defendant

at the 1401 G Street, N.E., dwelling and paying rental therefore, or was otherwise a

lawful resident or invitee, and the infant Plaintiff, Jaimeon Anthony Brooks, lived in

the dwelling or frequented the dwelling as an invitee of the tenant during December

1992 to February 1999.

4.  Both before and after the time the infant Plaintiff moved into the dwelling, the

Defendant had either caused or allowed the continued existence of paint containing

lead pigment on its exterior and interior walls, doors, floors, ceilings, and woodwork, and knowingly allowed said paint to chip and flake thereby rendering the dwelling unsafe and dangerous, and unfit for human habitation, especially for children of tender years.

5. During the time the Plaintiff resided in the dwelling, the infant ingested and consumed paint and dust containing lead and lead pigment thereby causing the Plaintiff to suffer the injuries, illness, and infirmities herein alleged.

6. The injuries, illness, and infirmities of the Plaintiff were due alternatively or cumulatively to:

a) The negligence of the Defendant in applying lead based paint in the dwelling.

b) The negligence of the Defendant and/or the Defendant's agents in failing to warn the Plaintiffs of the lead hazard which the Defendant and/or the Defendant's agents knew or should have known or had reason to know existed in the premises.

c) The negligence of the Defendant in providing the premises to the Plaintiffs with already chipping, peeling and/or flaking surfaces in violation of the Code of Laws of the District of Columbia, the District of Columbia Municipal Regulations, and other public and local laws of the District of Columbia and the United States.

d) The negligence of the Defendant and/or the Defendant's agents in undertaking to paint the premises prior to and/or during the infant's occupancy and doing so in an unreasonable, incomplete, unworkmanlike and/or illegal

manner, which foreseeably resulted in the paint soon chipping, flaking, and peeling, or to remain chipping, flaking, and peeling, and exposing the infant to the hazardous conditions complained of herein.

e)  The negligence of the Defendant in failing to correct the condition of the loose, flaking, and peeling paint on interior and exterior surfaces of the dwelling, after notice, either actual or constructive, that the paint was in need of repair when the Defendant or his agents knew or had reason to know that the paint was lead based paint, and the Defendant or his agents had a reasonable opportunity to perform these repairs.

f)  The negligence of the Defendant and/or the Defendant's agents in failing to completely and safely eradicate a lead paint hazard on the premises, of which the Defendant and/or the Defendant's agents had been advised, or was aware or should have been aware, either personally or through agents.

g)  The negligence of the Defendant and/or the Defendant's agents in failing to promptly abate the lead hazard after notice, actual or constructive, of the same.

h)  The negligence of the Defendant and/or the Defendant's agents in performing the lead abatement in such a fashion as to increase, rather than decrease, the infant's exposure to lead, including, but not limited to, performing the abatement while the Plaintiff was still in the dwelling, failing to warn the Plaintiff or the Plaintiff's adult caretaker of the danger of the abatement and the need to vacate the dwelling, using abatement methods which foreseeably increased the lead dust in the premises, performing improper or inadequate

4

clean up, leaving lead debris on the premises or in the vicinity of the premises accessible to the infant.

i) The Defendant and/or the Defendant's agents failing to properly maintain the common areas and exterior surfaces of the dwelling so as to be free of loose, flaking lead based paint, or lead paint easily accessible to children.

7.  At all times mentioned herein, the Defendant or the agent, servant, or employee of the Defendant who managed the property for the Defendant, was aware of the dangers of lead paint and that older houses often contain lead paint and that the instant premises was an older house.

8.  Further, at the time of the infant's poisoning the general state of knowledge was such – as a result of legislative enactments, medical research announcements, public health education undertaken by Federal, State, and Local governments and public health organizations, general media publicity in print, radio, and television, publicity by trade and professional organizations of property owners, and publicity and insurance premium adjustments by the insurance industry – that landlords in general knew, or had reason to know, or should have known of the dangers to children of lead based paint in older houses.

9.  The Defendant was also aware of these dangers as a result of prior lead violations at this property and at other properties; as a result of prior or other lead paint claims, or lead paint suits; and as a result of personal exposure to all of the sources of knowledge listed above in the preceding paragraph.  Or the Defendant's agents possessed such knowledge as a result of all the sources listed preceding.

10. In addition, the Defendant and/or workmen/agents of the Defendant visited the premises before and/or during the time the infant Plaintiff was there, and at that time loose, flaking, deteriorated paint was obviously and easily visible to a passerby on the interior and/or exterior surfaces of the dwelling, and was seen, or should have been seen by the person or persons visiting the dwelling.

11. Complaints regarding the deteriorated paint were also made to the Defendant and/or his agents before and/or after the infant was poisoned, and adequate repairs were not made in response in a timely and workmanlike fashion.

12. And the Defendant was otherwise negligent.

13. That as a result thereof and of the ingestion and consumption by the infant Plaintiff of the paint in the dwelling, the infant Plaintiff contracted and was caused to suffer harmful elevated blood lead levels.

14. That the Plaintiff was exposed to the toxic conditions complained of herein on each and every instance in which the Plaintiff was present at the property. Each and every instance of exposure resulted in the introduction of lead into the Plaintiff's bloodstream. This lead in the Plaintiff's bloodstream caused immediate permanent cellular damage in each instance. Lead was deposited in the Plaintiff's internal organs – spleen, liver, kidneys – and in the Plaintiff's brain and bones. In addition to the aforesaid immediate injury, the lead also caused permanent and continuing chronic injury. Lead, once introduced into the human body, is very, very slowly eliminated. There is medical evidence from autopsy that in the brain it is never eliminated. Lead is released from bone over years, thus, leaving aside the actual period of exposure, even after exposure ceased the Plaintiff continued with lead

6

throughout the Plaintiff's body and during that entire following period the Plaintiff continued to suffer injury, disruption of normal bodily functions, and cellular destruction and retardation.

15.   Because of the disruption of normal cellular processes during critical stages of development, the Plaintiff suffered severe and permanent brain damage.  The Plaintiff suffered physical pain and mental anguish.  The Plaintiff was hospitalized and separated from home and family at a time in the Plaintiff's development when the Plaintiff was vulnerable to permanent psychological injury as a result.  And such injury did result.  The Plaintiff was subjected to a harrowing course of medical therapy by painful deep muscle needle injection over the course of many days.  The Plaintiff required treatment by physicians and follow-up care necessitating time and expense.

16.  Throughout the period after the Plaintiff's lead exposure, the Plaintiff has endured the pains and humiliations and anguish caused by abnormal brain development and function as a result of brain damage from lead.  The Plaintiff is not the person dictated by the Plaintiff's genetic and societal potential.  The Plaintiff suffers a learning disability, shortened attention span, impulsivity, hyperactivity, extreme difficulty reading.  The Plaintiff's IQ has been diminished significantly.  As a direct and proximate result of the underlying physical brain damage suffered the Plaintiff has developed behavioral and emotional problems.

17.  As a result of the preceding, the Plaintiff's employment prospects have been permanently altered resulting in a lifetime loss of earnings and diminution of earning capacity.

WHEREFORE, the Plaintiff, Jaimeon Anthony Brooks, brings this action and claims $1,000,000 damages.

## COUNT TWO
### (Consumer Protection - Defendant Salvador C. Fulgueras)

18. The Plaintiff, Jaimeon Anthony Brooks, incorporates herein by reference all pertinent allegations of the preceding count.

19. The consumer protection provisions in the Code of Laws of the District of Columbia prohibit unfair or deceptive trade practices.

20. The representation that consumer realty has a characteristic, use, or benefit that it does not have, or that it is of a particular standard or grade which it is not, is an unlawful trade practice.

21. The Defendant, Salvador C Fulgueras, by marketing, and otherwise making available to the public for lease, the dwelling described herein impliedly represented that the dwelling was in compliance with the housing code and other public local laws of the District of Columbia, and of the laws of the United States and thus was fit for human habitation and contained no flaking, loose or peeling paint or plaster, or lead based paint accessible to children.

22. At the time the said dwelling was leased to the Plaintiff, Zeretia Brooks, the Defendant and/or the Defendant's agents knew that the dwelling was not of such quality and contained flaking, loose or peeling paint or plaster or lead based paint accessible to children.

23. The Defendant therefore violated the consumer protection provisions of the Code of Laws of the District of Columbia .

9

24.  Section 28-3905(k)(1) of the Code of Laws provides a cause of action for damages, treble damages, reasonable attorneys' fees, punitive damages, and any other proper relief for violations of the consumer protection provisions of the law.

WHEREFORE, the Plaintiff, Jaimeon Anthony Brooks, brings this action and claims $1,000,000 damages.

## COUNT THREE
### (Strict Liability – Defendant Salvador C. Fulgueras)

25. The Plaintiff, Jaimeon Anthony Brooks, incorporates herein by reference all pertinent allegations of the preceding counts.

26. The Defendant, Salvador C. Fulgueras, at the times aforesaid, was engaged in the business of leasing out rental premises for profit.

27. The Defendant released the premises involved herein into the marketplace for rental dwellings in a grossly defective condition in that the dwelling contained loose, flaking lead based paint.

28. The Defendant knew or should have known that this condition existed as the Defendant was responsible for the maintenance of the dwelling before it was placed into the stream of commerce.

29. This condition rendered the dwelling unreasonably dangerous to its intended user, the renting public.

30. The defective condition caused the Plaintiff the injuries previously stated.

31. The premises came to the use of the Plaintiff without substantial change in condition and were not altered or misused in any way by the Plaintiff.

32. The Defendant is therefore strictly liable in tort.

WHEREFORE, the Plaintiff, Jaimeon Anthony Brooks, brings this action and claims $1,000,000 damages.

11

## COUNT FOUR
### (Punitive Damages – Defendant Salvador C. Fulgueras)

33.  The Plaintiff, Jaimeon Anthony Brooks, incorporates herein by reference all pertinent allegations of the preceding counts.

34.  The Plaintiff further states that the tortious actions of the Defendant, Salvador C. Fulgueras, were taken by the Defendant with willful and wanton disregard for human life and safety and with full knowledge of the probable catastrophic consequences for those situated as the Plaintiff was.

35.  Such wanton and reckless inattention to the requirements of law and to the safety of others cannot be tolerated in a civilized society, nor should the perpetrator and wanton lawbreaker escape punishment.

36.  This is particularly so in the case of brain damaging injuries carelessly and cruelly inflicted upon an innocent, unsuspecting child of tender years in the name of the Defendant's pursuit of a tiny additional profit on the rental premises.

WHEREFORE, the Plaintiff, Jaimeon Anthony Brooks, brings this action and asks for $1,000,000 in punitive damages.

COUNT FIVE
(Loss of Services of a Minor Child – Defendant Salvador C. Fulgueras)

37.  The Plaintiff, Zeretia Brooks, in her own right, sues Defendant, Salvador C.

Fulgueras, in this second, separate and distinct cause of action, and incorporates

herein by reference all pertinent allegations of the preceding counts.

38.  And alleges that as a result of the wrongful and negligent acts and omissions

of the Defendant and of the ensuing injuries, illnesses, and infirmities of the

Plaintiff's child, Jaimeon Anthony Brooks, the Plaintiff suffered loss and damage

and was deprived of and lost the infant's services during minority.

39.  And the Plaintiff has been and will be required to incur expenses for hospital

care and treatment and for the services of physicians and surgeons required to

treat and administer to the aforesaid injuries, illnesses, and infirmities.

40.  The Plaintiff, as a result of the Defendant's negligence, was required to witness

her child being administered painful drug therapy as before described and to

witness painful blood tests which caused the Plaintiff severe emotional distress and

mental anguish.

41.  The Plaintiff was required to take her child for additional frequent medical visits

for the follow-up of lead poisoning which were over and above the normal pediatric

visits which would have been required absent the negligence of the Defendant.

42.  And the Plaintiff has otherwise sustained and will sustain loss and damage.


WHEREFORE, the Plaintiff, Zeretia Brooks, in her own right, brings this action
and claims $1,000,000 damages.

## COUNT SIX
### (Negligence – Defendant Martiniana T. Fulgueras)

43.  The Plaintiff, Jaimeon Anthony Brooks, incorporates herein by reference all pertinent allegations of the preceding counts.

44. For that all of the times herein mentioned the Defendant, Martiniana T. Fulgueras, owned and exclusively possessed and controlled, by the use of agents, servants or employees, a dwelling house erected on a lot of ground known as 1401 G Street, N.E., in the District of Columbia, which the Defendant either individually or by agents, servants, or employees, managed, supervised, maintained, and rented to tenants.

45. It is alleged alternatively that the Defendant, if sued in the capacity of a present or former corporate officer of a corporation which owned the said property, did personally participate in, inspire, and/or induce the tortious acts or omissions complained of herein.

46. The mother of the infant Plaintiff, Zeretia Brooks, was a tenant of the Defendant at the 1401 G Street, N.E., dwelling and paying rental therefore, or was otherwise a lawful resident or invitee, and the infant Plaintiff, Jaimeon Anthony Brooks, lived in the dwelling or frequented the dwelling as an invitee of the tenant during December 1992 to February 1999.

47. Both before and after the time the infant Plaintiff moved into the dwelling, the Defendant had either caused or allowed the continued existence of paint containing lead pigment on its exterior and interior walls, doors, floors, ceilings, and woodwork,

14

and knowingly allowed said paint to chip and flake thereby rendering the dwelling unsafe and dangerous, and unfit for human habitation, especially for children of tender years.

48. During the time the Plaintiff resided in the dwelling, the infant ingested and consumed paint and dust containing lead and lead pigment thereby causing the Plaintiff to suffer the injuries, illness, and infirmities herein alleged.

49. The injuries, illness, and infirmities of the Plaintiff were due alternatively or cumulatively to:

a)  The negligence of the Defendant in applying lead based paint in the dwelling.

b)  The negligence of the Defendant and/or the Defendant's agents in failing to warn the Plaintiffs of the lead hazard which the Defendant and/or the Defendant's agents knew or should have known or had reason to know existed in the premises.

c)  The negligence of the Defendant in providing the premises to the Plaintiffs with already chipping, peeling and/or flaking surfaces in violation of the Code of Laws of the District of Columbia, the District of Columbia Municipal Regulations, and other public and local laws of the District of Columbia and the United States.

d)  The negligence of the Defendant and/or the Defendant's agents in undertaking to paint the premises prior to and/or during the infant's occupancy and doing so in an unreasonable, incomplete, unworkmanlike and/or illegal manner, which foreseeably resulted in the paint soon chipping, flaking, and

peeling, or to remain chipping, flaking, and peeling, and exposing the infant to the hazardous conditions complained of herein.

e)  The negligence of the Defendant in failing to correct the condition of the loose, flaking, and peeling paint on interior and exterior surfaces of the dwelling, after notice, either actual or constructive, that the paint was in need of repair when the Defendant or his agents knew or had reason to know that the paint was lead based paint, and the Defendant or his agents had a reasonable opportunity to perform these repairs.

f)  The negligence of the Defendant and/or the Defendant's agents in failing to completely and safely eradicate a lead paint hazard on the premises, of which the Defendant and/or the Defendant's agents had been advised, or was aware or should have been aware, either personally or through agents.

g)  The negligence of the Defendant and/or the Defendant's agents in failing to promptly abate the lead hazard after notice, actual or constructive, of the same.

h)  The negligence of the Defendant and/or the Defendant's agents in performing the lead abatement in such a fashion as to increase, rather than decrease, the infant's exposure to lead, including, but not limited to, performing the abatement while the Plaintiff was still in the dwelling, failing to warn the Plaintiff or the Plaintiff's adult caretaker of the danger of the abatement and the need to vacate the dwelling, using abatement methods which foreseeably increased the lead dust in the premises, performing improper or inadequate

16

clean up, leaving lead debris on the premises or in the vicinity of the premises accessible to the infant.

   i)  The Defendant and/or the Defendant's agents failing to properly maintain the common areas and exterior surfaces of the dwelling so as to be free of loose, flaking lead based paint, or lead paint easily accessible to children.

50. At all times mentioned herein, the Defendant or the agent, servant, or employee of the Defendant who managed the property for the Defendant, was aware of the dangers of lead paint and that older houses often contain lead paint and that the instant premises was an older house.

51. Further, at the time of the infant's poisoning the general state of knowledge was such – as a result of legislative enactments, medical research announcements, public health education undertaken by Federal, State, and Local governments and public health organizations, general media publicity in print, radio, and television, publicity by trade and professional organizations of property owners, and publicity and insurance premium adjustments by the insurance industry – that landlords in general knew, or had reason to know, or should have known of the dangers to children of lead based paint in older houses.

52. The Defendant was also aware of these dangers as a result of prior lead violations at this property and at other properties; as a result of prior or other lead paint claims, or lead paint suits; and as a result of personal exposure to all of the sources of knowledge listed above in the preceding paragraph.  Or the Defendant's agents possessed such knowledge as a result of all the sources listed preceding.

53. In addition, the Defendant and/or workmen/agents of the Defendant visited the premises before and/or during the time the infant Plaintiff was there, and at that time loose, flaking, deteriorated paint was obviously and easily visible to a passerby on the interior and/or exterior surfaces of the dwelling, and was seen, or should have been seen by the person or persons visiting the dwelling.

54. Complaints regarding the deteriorated paint were also made to the Defendant and/or his agents before and/or after the infant was poisoned, and adequate repairs were not made in response in a timely and workmanlike fashion.

55. And the Defendant was otherwise negligent.

56. That as a result thereof and of the ingestion and consumption by the infant Plaintiff of the paint in the dwelling, the infant Plaintiff contracted and was caused to suffer harmful elevated blood lead levels.

57. That the Plaintiff was exposed to the toxic conditions complained of herein on each and every instance in which the Plaintiff was present at the property. Each and every instance of exposure resulted in the introduction of lead into the Plaintiff's bloodstream. This lead in the Plaintiff's bloodstream caused immediate permanent cellular damage in each instance. Lead was deposited in the Plaintiff's internal organs – spleen, liver, kidneys – and in the Plaintiff's brain and bones. In addition to the aforesaid immediate injury, the lead also caused permanent and continuing chronic injury. Lead, once introduced into the human body, is very, very slowly eliminated. There is medical evidence from autopsy that in the brain it is never eliminated. Lead is released from bone over years, thus, leaving aside the actual period of exposure, even after exposure ceased the Plaintiff continued with lead

throughout the Plaintiff's body and during that entire following period the Plaintiff continued to suffer injury, disruption of normal bodily functions, and cellular destruction and retardation.

58.  Because of the disruption of normal cellular processes during critical stages of development, the Plaintiff suffered severe and permanent brain damage.  The Plaintiff suffered physical pain and mental anguish.  The Plaintiff was hospitalized and separated from home and family at a time in the Plaintiff's development when the Plaintiff was vulnerable to permanent psychological injury as a result.  And such injury did result.  The Plaintiff was subjected to a harrowing course of medical therapy by painful deep muscle needle injection over the course of many days.  The Plaintiff required treatment by physicians and follow-up care necessitating time and expense.

59.  Throughout the period after the Plaintiff's lead exposure, the Plaintiff has endured the pains and humiliations and anguish caused by abnormal brain development and function as a result of brain damage from lead.  The Plaintiff is not the person dictated by the Plaintiff's genetic and societal potential.  The Plaintiff suffers a learning disability, shortened attention span, impulsivity, hyperactivity, extreme difficulty reading.  The Plaintiff's IQ has been diminished significantly.  As a direct and proximate result of the underlying physical brain damage suffered the Plaintiff has developed behavioral and emotional problems.

60.  As a result of the preceding, the Plaintiff's employment prospects have been permanently altered resulting in a lifetime loss of earnings and diminution of earning capacity.

WHEREFORE, the Plaintiff, Jaimeon Anthony Brooks, brings this action and claims $1,000,000 damages.

## COUNT SEVEN
### (Consumer Protection - Defendant Martiniana T. Fulgueras)

61.  The Plaintiff, Jaimeon Anthony Brooks, incorporates herein by reference all pertinent allegations of the preceding counts.

62.  The consumer protection provisions in the Code of Laws of the District of Columbia prohibit unfair or deceptive trade practices.

63.  The representation that consumer realty has a characteristic, use, or benefit that it does not have, or that it is of a particular standard or grade which it is not, is an unlawful trade practice.

64.  The Defendant, Martiniana T. Fulgueras, by marketing, and otherwise making available to the public for lease, the dwelling described herein impliedly represented that the dwelling was in compliance with the housing code and other public local laws of the District of Columbia, and of the laws of the United States and thus was fit for human habitation and contained no flaking, loose or peeling paint or plaster, or lead based paint accessible to children.

65.  At the time the said dwelling was leased to the Plaintiff, Zeretia Brooks, the Defendant and/or the Defendant's agents knew that the dwelling was not of such quality and contained flaking, loose or peeling paint or plaster or lead based paint accessible to children.

66.  The Defendant therefore violated the consumer protection provisions of the Code of Laws of the District of Columbia .

21

67.  Section 28-3905(k)(1) of the Code of Laws provides a cause of action for

damages, treble damages, reasonable attorneys' fees, punitive damages, and any

other proper relief for violations of the consumer protection provisions of the law.

WHEREFORE, the Plaintiff, Jaimeon Anthony Brooks, brings this action and
claims $1,000,000 damages.

## COUNT EIGHT
### (Strict Liability – Defendant Martiniana T. Fulgueras)

68. The Plaintiff, Jaimeon Anthony Brooks, incorporates herein by reference all pertinent allegations of the preceding counts.

69. The Defendant, Martiniana T. Fulgueras, at the times aforesaid, was engaged in the business of leasing out rental premises for profit.

70. The Defendant released the premises involved herein into the marketplace for rental dwellings in a grossly defective condition in that the dwelling contained loose, flaking lead based paint.

71. The Defendant knew or should have known that this condition existed as the Defendant was responsible for the maintenance of the dwelling before it was placed into the stream of commerce.

72. This condition rendered the dwelling unreasonably dangerous to its intended user, the renting public.

73. The defective condition caused the Plaintiff the injuries previously stated.

74. The premises came to the use of the Plaintiff without substantial change in condition and were not altered or misused in any way by the Plaintiff.

75. The Defendant is therefore strictly liable in tort.

WHEREFORE, the Plaintiff, Jaimeon Anthony Brooks, brings this action and claims $1,000,000 damages.

23

## COUNT NINE
### (Punitive Damages – Defendant Martiniana T. Fulgueras)

76. The Plaintiff, Jaimeon Anthony Brooks, incorporates herein by reference all pertinent allegations of the preceding counts.

77. The Plaintiff further states that the tortious actions of the Defendant, Martiniana T. Fulgueras, were taken by the Defendant with willful and wanton disregard for human life and safety and with full knowledge of the probable catastrophic consequences for those situated as the Plaintiff was.

78. Such wanton and reckless inattention to the requirements of law and to the safety of others cannot be tolerated in a civilized society, nor should the perpetrator and wanton lawbreaker escape punishment.

79. This is particularly so in the case of brain damaging injuries carelessly and cruelly inflicted upon an innocent, unsuspecting child of tender years in the name of the Defendant's pursuit of a tiny additional profit on the rental premises.

WHEREFORE, the Plaintiff, Jaimeon Anthony Brooks, brings this action and asks for $1,000,000 in punitive damages.

## COUNT TEN
### (Loss of Services of a Minor Child – Defendant Martiniana T. Fulgueras)

80.  The Plaintiff, Zeretia Brooks, in her own right, sues Defendant, Martiniana T. Fulgueras, in this second, separate and distinct cause of action, and incorporates herein by reference all pertinent allegations of the preceding counts.

81.  And alleges that as a result of the wrongful and negligent acts and omissions of the Defendant and of the ensuing injuries, illnesses, and infirmities of the Plaintiff's child, Jaimeon Anthony Brooks, the Plaintiff suffered loss and damage and was deprived of and lost the infant's services during minority.

82.  And the Plaintiff has been and will be required to incur expenses for hospital care and treatment and for the services of physicians and surgeons required to treat and administer to the aforesaid injuries, illnesses, and infirmities.

83.  The Plaintiff, as a result of the Defendant's negligence, was required to witness her child being administered painful drug therapy as before described and to witness painful blood tests which caused the Plaintiff severe emotional distress and mental anguish.

84.  The Plaintiff was required to take her child for additional frequent medical visits for the follow-up of lead poisoning which were over and above the normal pediatric visits which would have been required absent the negligence of the Defendant.

85.  And the Plaintiff has otherwise sustained and will sustain loss and damage.

WHEREFORE, the Plaintiff, Zeretia Brooks, in her own right, brings this action and claims $1,000,000 damages

Jason A. Kerpelman, Esquire
Saul E. Kerpelman & Associates
Suite 715
601 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 547-0202
D.C. Bar No. 463419
Attorney for Plaintiffs


## JURY DEMAND

Plaintiffs demand trial by jury.